Alton E. Sanders, Jr., the maternal grandfather, appeals from the trial court's order modifying his visitation rights with his three grandchildren.
In September 1996, Sherry Sanders Wright ("the mother") sued Bradley A. Wright, ("the father") for a divorce and sought custody of the parties' three children born of the marriage. In January 1997, the paternal grandmother intervened, seeking temporary custody of the children. Pursuant to an agreement of the parties, the court, on April 5, 1997, entered an interlocutory order, awarding the paternal grandmother temporary custody of the children and ordering that beginning August 1, 1997, the mother and father would have joint legal custody, with the mother having primary physical custody. On September 10, 1997, the maternal grandfather petitioned to modify, or, in the alternative, to intervene, seeking visitation rights with the children, pursuant to § 30-3-4, Ala. Code 1975.
Following an ore tenus proceeding, the court, on September 29, 1997, entered a final judgment of divorce, ratifying the April 5, 1997, agreement of the parties. The court granted the grandfather's petition, awarding him visitation rights, stating, in part:
 "2. That paragraph 6 of the Divorce Decree herefore rendered by this Court between [the mother] and [the father] herein shall be modified to include the following visitation for the [grandfather] herein:
 "`viii) That the [grandfather], namely, Alton E. Sanders, Jr., shall have the right to visit with the minor children of the [mother] and [father] . . . one Saturday each month from 9:00 a.m. to 6:00 p.m. . . . ."
Both the mother and the father filed postjudgment motions, arguing that it was not in the best interests of the children for the grandfather to exercise unsupervised visitation and that he had not maintained contact with the children for the preceding three years. The court, on November 22, 1999, modified its visitation award, stating:
 "After [a] hearing in the above cause, the Court modifies its Order of September 29, 1999, as follows: Visitation of minor children by [the grandfather] is to be from 9:00 a.m. to 1:00 p.m. on days set forth in [the] Order and said visitation to take place at a place designated by the parent on whose weekend the visitation occurs."
The grandfather appealed, arguing that the trial court erred in modifying its original order to allow the mother and father "to dictate the terms" of his visitation with the children.
In C.Y. v. C.L., 726 So.2d 733 (Ala.Civ.App. 1999), this court stated:
 "The right of grandparent visitation did not exist at common law but was instead created by legislative act. B.R.O. v. G.C.O., 646 So.2d 126 (Ala.Civ.App. 1994). Under common law, grandparents lacked any legal right to visitation if that visitation was forbidden by the parents, and the parents' only obligation to allow visitation was a moral, not a legal, obligation. Ex parte Brownstein, 434 So.2d 780 (Ala. 1983). The only right to grandparent visitation has been provided by the legislature. . . ." *Page 472 
Id. at 734. Effective September 1, 1999, the legislature repealed § 30-3-4, Ala. Code 1975, and expanded grandparent visitation rights under § 30-3-4.1, Ala. Code 1975. That section states, in part,
 "(b) Except as otherwise provided in this section, any grandparent may file an original action for visitation rights to a minor child if it is in the best interest of the minor child and one of the following conditions exist[s]:
 "(1) When one or both parents of the child are deceased.
 "(2) When the marriage of the parents of the child has been dissolved.
 "(3) When a parent of the child has abandoned the minor.
"(4) When the child was born out of wedlock.
 "(5) When the child is living with both biological parents, who are still married to each other, whether or not there is a broken relationship between either or both parents of the minor, and the grandparent and either or both parents have used their parental authority to prohibit a relationship between the child and the grandparent.
". . . .
 "(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall grant any grandparent of the child reasonable visitation rights if the court finds that the best interests of the child would be served by the visitation. In determining the best interest of the child, the court shall consider the following:
 "(1) The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents.
 "(2) The preference of the child, if the child is determined to be of sufficient maturity to express a preference.
"(3) The mental and physical health of the child.
 "(4) The mental and physical health of the grandparent or grandparents.
 "(5) Evidence of domestic violence inflicted by one parent upon the other parent or the child. If the court determines that evidence of domestic violence exists, visitation provisions shall be made in a manner protecting the child or children, parents, or grandparents from other abuse.
 "(6) Other relevant factors in the particular circumstances."
The grandfather testified that he was a self-employed construction worker; that he and his wife had divorced in 1982; and that he had obtained custody of the mother and her brother.
The grandfather stated that the mother and her three children came to live with him for about three months in 1997. He said that after he and the mother had had a disagreement, the mother and her children had moved out of his residence. He stated that he had developed a relationship with his grandchildren, which included taking weekend trips to participate in horse shows in Tennessee and that he had cared for the children on a daily basis. The grandfather introduced into evidence a videotape and pictures as proof of his contact with the children. He described a bad relationship with the majority of the members of his family; said that he was estranged from his son and daughter; and said that he had not seen his grandchildren since September 1997.
The mother testified that she and the father share a joint-custody arrangement, with her having custody every Monday and Thursday and alternating weekends, and with the father having custody every Tuesday and Wednesday and alternating weekends. She stated that she does not want the grandfather to have contact with the children and that the father supports her decision. The mother stated that the grandfather had told her "bad stuff" about the entire family and that she and her brother had suffered both physical and emotional abuse while being raised by him. *Page 473 
The father testified that he supported the mother's decision and that he had had contact with the grandfather only twice. The father described the grandfather as a "mean old man" and said his opinion was based on his observation of a bad relationship between the mother and the grandfather.
After thoroughly reviewing the record, we conclude that the trial court did not err in modifying its order regarding the visitation rights of the grandfather.
AFFIRMED.
Robertson, P.J., and Monroe, Crawley, and Thompson, JJ., concur.