866 So.2d 570 (2003)
Scott McQUINN
v.
Staci McQUINN.
Staci McQuinn Edwards
v.
Scott McQuinn.
2010531.
Court of Civil Appeals of Alabama.
May 23, 2003.
*571 Dan Warnes, Guntersville, for appellant/cross-appellee Scott McQuinn.
Carla M. Handy, Gadsden, for appellee/cross-appellant Staci McQuinn Edwards.
PER CURIAM.
This is an appeal by Scott McQuinn ("the father") from a trial court's modification of a judgment modifying visitation and assessing a child-support arrearage. Staci McQuinn ("the mother") cross-appeals and argues that the judgment is in error as it relates to visitation and to mediation.
The father and the mother married in December 1992. They were divorced in May 1999 in Tennessee. The divorce judgment incorporated a "parenting order" that set forth provisions regarding visitation and child support with respect to the children of the parties and the mother's child by a previous marriage. The mother received physical custody of the children, and the father received visitation every other Saturday from 9 a.m. to 6 p.m. Although the divorce judgment allowed visitation with all three minor children, no overnight visitation was permitted. The judgment also allowed the father two weekly telephone conversations with the children and unimpeded correspondence with the children and provided that all pertinent medical and educational information was to be sent directly from schools or health-care providers to the father. The judgment ordered the father to pay $200 per week in child support. In February 2000, the father's child-support obligation was reduced to a monthly payment of $515.
Following the divorce, the mother and the children moved to Marshall County, Alabama. The father petitioned for a modification of the judgment and for the entry of an order of contempt in September 2000. As part of the grounds supporting a claimed material change in circumstances, the father informed the court that he is now serving in the U.S. Navy as an in-flight aviation electronics technician on surveillance aircraft and that he is stationed at Island Center in the State of Washington. According to the father, the distance between Alabama and Washington makes the parties' compliance with visitation provisions specified in the divorce judgment of one Saturday every other week (with no overnight visitation) difficult, if not impossible. In his petition for an order of contempt, the father alleged that the mother had frequently prevented or interfered with his attempts to telephone the children and to arrange visitation with the children.
The mother filed an answer and counterclaim on January 5, 2001. The mother asserted that the father's visitation had been restricted at the time of the divorce judgment because of his emotional instability and excessive drinking and that visitation should not be altered by the trial court. In her counterclaim, she argued that the father should be held in contempt for failure to pay child support.
Following an ore tenus hearing held on July 11, 2001, the trial court entered a judgment on October 3, 2001, addressing the issues raised by the parties' pleadings. In that judgment, the trial court reaffirmed *572 that the father's visitation privilege granted in the 1999 divorce judgment would still apply as to all three minor children. Because of the distances involved, however, the trial court ordered that the children be made available during visitation periods to the father or to certain specified members of the father's family, including his current wife, his father and mother, his stepfather, and his brother. The trial court granted the father up to 10 weekends each year for visitation from Friday at 4 p.m. until Sunday at 6 p.m., with the specific arrangements to be made by the parents based upon two weeks' notice by the father. The trial court granted the father visitation for one-half of the children's Christmas vacation each year; the Thanksgiving holiday every other year; academic spring break every other year; and during summer school vacation from June 15 until July 31 every year. The father was also given one day of visitation on Father's Day and on the father's birthday each year.
The judgment requires the father to provide all transportation necessary for pickup and delivery of the children to exercise visitation. Additionally, the order allows the father to telephone the children no more than twice each week and to speak on each occasion with each child for no more than 15 minutes.
The judgment further states that educational, health-care, and religious decisions are joint decisions of the parents. However, each parent is to make all day-to-day decisions when the children are in his or her physical custody as well as emergency decisions regarding the health and safety of the children. Lastly, the trial court ordered that future disputes regarding visitation, education, nonemergency health care, and religious decisions were to be referred to mediation through a court-appointed mediator.
The mother filed a motion for a new trial, or, in the alternative, a motion to alter, amend, or vacate the trial court's judgment on October 25, 2001, and amended that motion on November 2, 2001. In her motion, as amended, the mother argued that the trial court erred (1) in granting visitation with the stepson; (2) in purportedly granting "rights of visitation" to the father's extended family; (3) in requiring the parties to submit to mediation in the future; and (4) in failing to find the father in arrears in his child-support payments.
On January 16, 2002, the trial court issued an order amending the original judgment in the following manner: all persons listed as having access to the children were deleted except for the father; the paternal grandfather was permitted to pick up the children on behalf of the father in order for the father to exercise visitation; the father was adjudged to be $5,021 in arrears in his child support plus due to pay interest of $1,266.14; and the father was held in contempt of court, but punishment was suspended on the condition that he pay an additional $100 each month to reduce the arrearage.
The father appeals, alleging that the trial court erred (1) in amending the October 2001 judgment so as to prevent the father from designating family members to effectuate his visitation with the children, and (2) in determining that the father had a child-support arrearage of $5,021 plus interest. The mother cross-appeals, arguing that the trial court erred (1) in ordering visitation with the father's stepchild, and (2) in mandating mediation regarding visitation in the future.
Under the ore tenus standard, and given the attendant presumption of correctness that attaches to the trial court's ruling on evidence received at an ore tenus proceeding, we will not reverse the trial court's *573 judgment unless it is unsupported by the evidence. See Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998); Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996). Visitation is a matter that rests within the sound discretion of the trial court; however, this discretion is guided by what will protect the best interests of the child. See Hall v. Hall, 717 So.2d 416 (Ala.Civ.App.1998).

I. Visitation Issues

A. Visitation with the Father's Natural Children
The trial court originally granted the father's request for modification of visitation in its October 3, 2001, judgment. In that judgment, the trial court ordered that the minor children be made available to the father or to the father's family and listed specific individuals that would be recognized as the father's "designees." These "designees" included the father's wife, his parents, his stepfather, and his brother. When the mother, citing Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), objected on the grounds that the trial court was granting visitation to persons other than a parent, the trial court modified the order to exclude everyone except the father, but allowed the paternal grandfather to assist the father in exercising visitation with the children.
We note that although the mother, not he father, is the primary physical custodian of the children, the father's fundamental right to direct the care, control, and association of his children is no less fundamental and protected than the right of the mother to do the same. See Troxel v. Granville, 530 U.S. at 66, 120 S.Ct. 2054. The decision in Troxel does not differentiate between custodial and noncustodial parents as to their fundamental rights to determine the care, control, and association of their children.
The mother incorrectly labels this a "grandparent-visitation" case, and claims that the trial court improperly attempted in its original judgment to grant "de facto" visitation with the father's parents and family members. The father correctly argues that the instant case does not involve grandparent-visitation rights pursuant to any Alabama statute; rather, this lawsuit results from the mother's decision to prevent the children from visiting their father or from developing and maintaining any continuing association with members of the father's family.
The mother appears to argue that the father, during the periods in which he is entitled to direct the care, custody, and control of his children, does not have the right to allow his parents or siblings or other suitable family members to visit with the children in his stead, while asserting that she does have such rights during the periods in which she has custody of the children. In previous visitation cases, this court has reversed trial-court judgments providing for visitation, either directly or by implication, to the noncustodial parent at the sole discretion of the custodial parent. See K.L.U. v. M.C., 809 So.2d 837 (Ala.Civ.App.2001), and Bryant v. Bryant, 739 So.2d 53 (Ala.Civ.App.1999). The record reveals that this case is more analogous to those visitation cases than to a grandparent-visitation case.
The record reveals that the children live with their mother and her husband in Guntersville, Alabama. The father is on active duty with the U.S. Navy and is stationed out of state; he is therefore subject to circumstances that may impair his ability to personally accompany the children during all visitation periods. According to testimony at trial, the paternal grandfather lives in Dunedin, Florida, a town located approximately 16 hours from Guntersville by automobile. It is unclear from *574 the record where the paternal grandmother lives. The mother offered nothing more than her personal disapproval to indicate that contact with the father's family would be harmful to the children.
In most cases, a trial court should not include in its visitation provision a specification of precisely which persons may be permitted to transport children to and from visitation. When the judgment does not indicate who may aid the custodial and/or the noncustodial parent in transportation to and from visitation, the noncustodial parent is not prevented from making use of suitable family members for that purpose. However, in extreme cases where the parents have demonstrated an inability to be flexible and to compromise, as seems apparent in the present case, a trial court's specifically naming persons who are authorized to aid the noncustodial parent by providing transportation may prove helpful and may prevent future visitation disputes and further litigation over visitation issues.
The present judgment, however, limits the father to utilizing the aid of only the paternal grandfather to transport the children during visitation. Such a restrictive limitation, based on the specific facts of this case, is an abuse of the trial court's discretion because of the father's employment and the considerable distances involved, both between the father's home and the children's home and between the other family members' homes and the father's and the children's homes.
Furthermore, it is the consensus of this court that the father did not forfeit any of his fundamental parental rights when he divorced, or when he joined the armed services. Because no such forfeiture occurred, the father retains the right to allow other suitable family members to visit with his children during his visitation periods even when he is unable to be present.
The mother argues that the trial court's list of "designees" who may exercise the father's visitation in his absence violates Alabama's grandparent-visitation statute, § 30-3-4.1, Ala.Code 1975, in part because it permits the grandparents visitation without requiring that they meet the evidentiary burdens placed upon them by the statute. What the mother misunderstands is that this case does not involve whether grandparents or third parties have a right to visitation, but instead involves the father's right, during his visitation periods, to determine with whom his children may visit. Properly viewed, the father's right does not, as the mother characterizes it, allow third-party visitation through a "back door." Nor does the recognition of the father's right to determine the care, control, and association of his children during his visitation periods amount to what the mother describes as "routinely forc[ing] the children to visit with third parties." Instead, the mother's contentions concern whether one parent can veto the other parent's choices concerning with whom the children visit without, from what we can perceive in the record, any particular reason.
As the father points out, the mother is free to leave the children in day care during her working hours, with babysitters when she has social engagements, and apparently (based upon the statement of her counsel at trial) with her sister (or other family members) in Tennessee for what her counsel described as extended "regular visitation periods," all without his approval or even his knowledge. Essentially, the mother argues that the father, as the noncustodial parent, has been stripped of the rights of a parent and that she, and only she, may exercise those parental rights. She is mistaken. The judgment properly permits the father to "take the children to *575 such reasonable activities as [he] may determine."
Because the trial court's judgment, as modified, requires the physical presence of either the father or the paternal grandfather at the start of each visitation period, despite the overwhelming evidence that such a requirement would unduly burden the father, we must reverse the trial court's judgment with respect to visitation. Upon remand, the trial court's judgment need not expressly grant the father the right to allow the grandparents, an uncle, or another suitable family member to visit with the children during the father's visitation periods. If the mother wishes to object to the children's visitation with a specific family member, she must state a legitimate objection to visitation with that person, at which time the trial court, after considering the evidence in support of and in opposition to such an objection, may properly restrict the children's exposure to that particular person. In the absence of any evidence of unsuitability of the paternal grandparents or of the father's wife or siblings, however, we conclude that the scope of the father's fundamental parental rights is broad enough to allow him to permit his children to visit with any member of his extended family, even if the judgment is silent with respect to that specific right.

B. Visitation with the Stepson
The mother's cross-appeal alleges that the trial court erred when it allowed continued visitation with the minor stepson. The original divorce judgment entered by the Tennessee court in June 1999 awarded the father visitation with the minor stepson. The record does not indicate any successful appeal by the mother from that award of visitation. On September 28, 2000, the father sought to modify visitation with regard to only the two children born of the marriage. His petition does not include a request to modify his visitation with regard to the stepson. At trial, the father referred to both of his natural children during his testimony, but did not mention the stepson. The Alabama court merely modified the dates of visitation, without attempting to change the substance of the original judgment.
The proper method by which the mother could have attacked the validity of the initial adjudication was by a direct appeal from the Tennessee judgment. The mother did not appeal from the Tennessee judgment; therefore, except as it may be subject to modification upon a change in circumstances, the right of the father to visitation with the stepson became the law of the case. See generally G.P. v. A.A.K., 841 So.2d 1252 (Ala.Civ.App.2002) (mother petitioned Alabama trial court to terminate grandparent-visitation rights awarded in Kentucky judgment, arguing that statute was unconstitutional; trial court did not have authority to redetermine, ab initio, whether the grandparents should have been granted visitation, but did have authority to modify that visitation based on the best interests of the child).
The Tennessee court originally determined that the best interests of the stepson would be served by his having visitation with his stepfather. The mother's failure to appeal the original judgment that granted the father visitation with his stepson precludes her from attempting to place error on the Alabama court in a collateral attack. See, e.g., Smith v. Wiley Sanders Trucking Co., 581 So.2d 1124 (Ala.Civ.App.1991); Greenhill v. Bear Creek Dev. Auth., 519 So.2d 938 (Ala.1988). Neither party in this case requested a modification of the Tennessee judgment's provisions relating to visitation with the stepson. Once custody or visitation is established by a valid judgment, the party who is entitled to such custody or visitation *576 (in this case the father) is under no obligation to present evidence that such visitation continues to be in the best interests of the child in the absence of proof that such visitation is no longer warranted because of a material change of circumstances.
The trial court correctly gave full faith and credit to the Tennessee judgment's provisions relating to visitation that were not implicated by the father's request for modification of visitation regarding his natural children. See U.S. Const., art. IV, § 1; G.P. v. A.A.K., supra; Menendez v. COLSA, Inc., 852 So.2d 768 (Ala.Civ.App. 2002). We find no error on the part of the trial court as to the father's visitation with the stepson, and its judgment is due to be affirmed as to that issue.

II. Child-Support Arrearage
The father's second argument on appeal relates to the calculation of his child-support arrearage. Specifically, he contends that the trial court erred in failing to apply certain "overpayments" that the father claims were made during the first three months following the parties' divorce. The mother disputed the payments and offered a chart of payments received. "The award or denial of a credit against an arrearage is within the sound discretion of the trial court and will not be reversed absent a showing of plain and palpable abuse." Phillippi v. State ex rel. Burke, 589 So.2d 1303, 1304 (Ala.Civ.App.1991). We conclude that the trial court was presented substantial evidence from which it could determine that the father was over $5,000 in arrears in his child-support payments. The trial court's judgment is due to be affirmed as to that issue.

III. Mediation
The mother argues that that portion of the trial court's judgment requiring the father and the mother to submit to mediation for all future disputes except those concerning financial support is erroneous. She cites no cases to support this argument, but alleges that the trial court's mandate is in violation of the Alabama Civil Court Mediation Rules. The mother's argument is not well-taken.
The provisions in the trial court's judgment relating to mediation closely parallel the provisions of the Tennessee judgment relating to resolution of domestic disputes that might arise between the parties in the future. Neither party challenged those provisions by appeal; therefore, they became the law of the case. See G.P. v. A.A.K., supra. This court will affirm a trial court's judgment on any valid legal ground. See Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). We conclude that the trial court acted within its discretion by continuing the Tennessee judgment's provisions ordering the parties to mediate disputes over future visitation, health-care issues, and educational matters, rather than seeking judicial intervention by filing another modification petition.

IV. Summer Visitation
The mother's final argument on appeal is that the trial court erred in granting the father six weeks of summer visitation every year during the month in which two of the minor children celebrate their birthdays. We find the mother's argument to be disingenuous in light of the fact that her behavior in not allowing the father visitation is the primary reason the father filed the petition to modify visitation and is what precipitated the trial court's entry of such a specific visitation order. We note, however, that in his reply brief, the father has indicated that he would be willing to alternate six weeks of summer visitation in order to allow the mother to have physical custody of the children during their birthdays every other year. Because the judgment of the trial court regarding visitation is due to be reversed in part, we note that *577 on remand the trial court may, in its discretion, properly alter its visitation award in the manner proposed by the father in his reply brief.
Based on the foregoing facts and authorities, we reverse the trial court's judgment as to visitation with the children born of the parties' marriage. We affirm the trial court's judgment as to all other issues raised by the parties. The cause is remanded for the entry of a visitation judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON, J., concurs in the result.
YATES, P.J., and MURDOCK, J., concur in part, concur in the result in part, and dissent in part.
YATES, Presiding Judge, concurring in part, concurring in the result in part, and dissenting in part.
I agree with the main opinion on the issues of child-support arrearage, requiring mediation, and allowing the mother to have the children every other year on their birthdays.
Next, I concur in the result reached by the main opinion regarding visitation. The original judgment, modifying visitation, provided:
"The children will be made available to [the father] or [the father's] family during his visitation periods. For the purposes of this document, [the father] shall mean [the father] or [the father's] family designees. Family designees of [the father] are as follows:
"a. Holly McQuinn ([the father's] wife).
"b. Larry McQuinn ([the father's] father).
"c. Nancy Sola ([the father's] mother).
"d. Frank Sola ([the father's] stepfather).
"e. Shawn McQuinn ([the father's] brother)."
The mother filed a Rule 59, Ala. R. Civ. P., motion, arguing, among other things, that the trial court's order impermissibly granted visitation rights to the grandparents and to other family members. In response, the father argued that this case did not involve grandparent visitation, but instead involved his fundamental right to determine with whom his children associated. He also stated:
"In the event that the court finds that its present order is too specific in naming [the father]'s relatives who are named as having alternate rights to visit, the [father] requests the court to address the issue of whether [the father] can inform [the mother] as to third parties who will pick up and deliver the children during visitation periods and supervise the children during those visitation periods. Without this instruction [the father] will have no choice but to file the appropriate pleadings to litigate this matter unless the court specifically addresses this issue."
Subsequently, the trial court modified its visitation order, in pertinent part, as follows:
"All persons listed as being able to exercise visitation with the minor children are deleted except for the [father,] Scott McQuinn. The paternal grandfather may be allowed to pick the child up for [the father] in order for [the father] to exercise visitation."
"Among those interests lying at the core of parents' rights to raise and care for their own children is the right to control *578 their children's companions and associations." R.S.C. v. J.B.C., 812 So.2d 361, 368 (Ala.Civ.App.2001). The trial court correctly modified its original judgment to eliminate the list of designees for visitation; that list could have been considered to have ordered visitation by nonparents. However, the issue before this court is the trial court's modified judgment allowing the grandfather to transport the children to assist the father in exercising visitation. I agree with the result reached by the main opinion that the judgment, with regard to visitation, should be modified on remand to allow the father flexibility in exercising his visitation. The father is already required by the trial court's judgment to "coordinate" visitation with the mother upon two weeks' notice by the father, and, in my opinion, this inherently includes identifying the person, if any, who will be assisting the father in his visitation.
Last, I dissent on the issue of stepparent visitation. The father sought to modify visitation with his two natural children because of their geographical distance, but did not request the same modification as to his stepson and did not mention his stepson at trial. No evidence was presented that the father desired to continue his relationship with the stepson, or that it would be in the stepson's best interest that he do so. "To force a former stepparent's (legally a mere `non-parent') visitation upon a natural parent or the former stepchild, over either's objection, would appear to be a detriment to the best interests of the child." Shoemaker v. Shoemaker, 563 So.2d 1032, 1034 (Ala.Civ.App.1990).
The parties divorced in Tennessee in May 1999 after almost seven years of marriage, where, at that time, they agreed that the father could have visitation with the stepson. I recognize that the Marshall Circuit Court had jurisdiction over the father's modification petition and had the authority to modify the original visitation incorporated into the judgment of the Tennessee court, § 30-3B-203(2), Ala.Code 1975; however, I believe that the trial court abused its discretion when the father did not request a change in visitation or present some evidence that it was in the stepson's best interests.
MURDOCK, Judge, concurring in part; concurring in the result in part; and dissenting in part.
I concur in the main opinion as it relates to the issue of the father's child-support arrearage. My conclusions as to the remainder of the issues presented in this appeal are as follows.

I. The Father's Visitation Rights

A. The Father's Visitation with His Own Children

I agree with the main opinion when it states that "the father's fundamental right to direct the care, control, and association of his children is no less fundamental and protected than the right of the mother to do the same. See Troxel v. Granville, 530 U.S. [57] at 66, 120 S.Ct. 2054 [2000)]." 866 So.2d at 573. To paraphrase the sentence that then follows this statement in the main opinion, "[t]he decision in Troxel does not differentiate between" the parent with the right to the primary physical custody of a child and the parent with the secondary right to that custody, i.e., visitation. 866 So.2d at 573.
The main opinion notes:
"The mother appears to argue that the father, during the periods in which he is entitled to direct the care, custody, and control of his children, does not have the right to allow his parents or siblings or other suitable family members to visit with the children in his stead, while asserting that she does have *579 such rights during the periods in which she has custody of the children."
866 So.2d at 573. I agree with the main opinion that this argument must be rejected.
"Among those interests lying at the core of parents' rights to raise and care for their own children is the right to control their children's companions and associations." R.S.C. v. J.B.C., 812 So.2d 361, 368 (Ala.Civ.App.2001). As noted in J.S. v. D.W., 835 So.2d 174, 182 (Ala.Civ.App. 2001), reversed on other grounds, 835 So.2d 186 (Ala.2002), "[t]he common law recognized the right of parents to determine with whom their child would associate." See also M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) ("[c]hoices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as `of basic importance in our society,'... rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect"); Hoff v. Berg, 595 N.W.2d 285 (N.D.1999) (holding North Dakota's grandparent-visitation statute unconstitutional on the ground that it burdened the parents' fundamental right to control their children's associations). As I stated in L.B.S. v. L.M.S., 826 So.2d 178, 192 (Ala.Civ.App.2002) (Murdock, J., concurring in the judgment of reversal only), in the context of a grandparent-visitation case, a court may not constitutionally substitute its decision for that of a fit, custodial parent as to what, if any, visitation with a third party is in a child's overall best interest, unless it is shown by clear and convincing evidence that "the net effect of the court's substituting its decision for that of the parents will be to prevent substantial harm to the child." See Williams v. Carros, 576 F.Supp. 545, 547 (W.D.Pa.1983) (recognizing that the right to "regular and appropriate visits between [a mother] and her children ... [is a] fundamental liberty interest[] protected by the Constitution"); Mason v. Mason, (Ms. E2001-02208-COA-R3-CV, June 7, 2002) (Tenn.Ct.App.2002) (not published in S.W.2d) (holding that a noncustodial parent has a fundamental right to visitation with his children, and that, while this right is not absolute, the courts may only "restrict, suspend, or terminate visitation rights upon the presentation of clear and definite evidence that permitting continued visitation will jeopardize the child physically or emotionally").
It is important to note that this case is not a contest between two fit parents over who should have what custodial time with their children. The issue before us is not whether the father's visitation rights should be modified or reduced so as to shift more custodial time to the mother in light of the manner in which the father proposes to exercise his time with the child. If it were, we might have a different case, for it may be questioned whether a fit parent's rights as to the custody of his or her children is protected by the Constitution as a fundamental right, as against the other fit parent's right to such custody, in the same manner it is protected as such by the Constitution as against nonparents. As stated in J.S.:
"Although the `best-interests' standard applies in custody and visitation statutes involving parents, those cases involve competing parental rights. In other words, in those cases the rights of both the mother and the father are involved and neither parent's rights outweigh the other's."
J.S., 835 So.2d at 184. See also In re Marriage of Hruby, 304 Or. 500, 510, 748 P.2d 57, 62-63 (1987) ("[I]n custody disputes between natural parents ..., the interests of the children are more nearly *580 the exclusive determinants of the custody decision. This is because the competing custodial rights tend to cancel each other, leaving only the interests of the children as relevant considerations.").
In the present case, however, the transfer of some of the father's custodial time to the mother is not what the trial court's judgment is about. Instead, that judgment is one in which the State seeks to restrict the manner in which the father may exercise his fundamental rights as to the care and control of his children during the periods that he has been awarded custody of the children. It infringes on those rights without a clear and convincing showing that the net effect of the court's substituting its decision for that of the father will be to prevent substantial harm to the children. That judgment therefore violates the father's fundamental rights under the Fourteenth Amendment and must be reversed. While I therefore agree in large measure with the analysis in the main opinion, I believe that the main opinion somewhat understates matters when it states that a trial court "should not" include in its visitation judgment a provision prescribing which persons a father may or may not select to transport a child to and from visitation. 866 So.2d at 574. My conclusion that the father maintains his fundamental parental rights during his custodial time with his children leads me to conclude that the State may not substitute its decision as to this matter for the decision of a fit parent, absent a compelling state interest in doing soi.e., where the net effect of failing to do so would be substantial harm to the children.
I also note the main opinion's statement that "where the parents have demonstrated an inability to be flexible and to compromise, as seems apparent in the present case, a trial court's specifically naming persons who are authorized to aid the noncustodial parent by providing transportation may prove helpful and may prevent future visitation disputes and further litigation over visitation issues." 866 So.2d at 574. While the State's designation of persons who may assist a parent in exercising his or her visitation rights may, indeed, be "helpful" and "prevent future visitation disputes," the desire to achieve such objectives would not override a parent's fundamental constitutional right to make decisions for the care of his children in his custody, absent the requisite showing of harm.
Finally, I note that the main opinion concludes by stating that if, on remand, the mother can prove a "legitimate objection" to the children's association with a particular person, the trial court "may properly restrict" the children's contact with that person. 866 So.2d at 575. Because the father in this case retains the fundamental parental right "to direct the care, custody, and control of his children," 866 So.2d at 573, during those periods when their custody has been entrusted to him, it follows that the contemplated "basis" for the State to substitute its judgment for that of the father must be the constitutionally requisite showing of harm to the children absent such substitution i.e., there must be clear and convincing evidence that the net effect of the State not substituting its decision will be substantial harm to the child.

B. The Father's Visitation with His Stepson

The original divorce judgment entered by the Tennessee court in June 1999 awarded the father visitation with the stepson. The mother did not appeal from that decision and, therefore, I agree with the main opinion: Except as it may be subject to modification based upon a change in circumstances, the right of the father to visitation with the stepson became *581 the law of this case. See generally G.P. v. A.A.K., 841 So.2d 1252 (Ala.Civ. App.2002).
The father's petition in this case sought to modify visitation only with respect to the two children born of his marriage to the mother. His petition did not include a request to modify his visitation with his stepson. Further, at trial, the evidence introduced in support of the father's petition referred to the father's natural children, not to the stepson. Thus, no issue as to the visitation of the father with the stepson was either pleaded by the parties or tried by their implied consent.
The father was under no obligation to ask for or to present evidence to support the continuation of the Tennessee judgment, in the absence of any challenge to that judgment by the wife. Once custody or visitation is established by a valid judgment, the party who is entitled to such custody or visitation is under no obligation to thereafter present evidence that such visitation continues to be in the best interests of the child, in the absence of some challenge to that visitation by another party based on a material change of circumstances.
Because there was no pleading nor any proof requesting or justifying a change in visitation between the father and the stepson, that portion of the trial court's judgment changing visitation as between the father and the stepson must be reversed. I would instruct the trial court on remand to reinstate the visitation arrangement relating to the stepson as established in the Tennessee judgment.

C. An Additional Note Regarding the Father's Visitation With His Own Children

Having said the foregoing, and given the sibling relationship of all three children involved, the nature, timing, and duration of visitation to be exercised by the father as to the stepson becomes a factor that the trial court may appropriately consider on remand in deciding what visitation would be in the best interests of the father's natural children.

II. Mediation

To the extent the trial court's judgment requires the parties to submit to mediation future disputes that would otherwise be addressed by the filing of new lawsuits, I note that parties generally have the right to seek judicial relief as to disputes that arise between them. Rule 2 of the Alabama Civil Court Mediation Rules does not purport to abrogate that right generally. It merely provides that a court "may enter an order directing the parties to a pending action to proceed with mediation of one or more disputes in the lawsuit." (Emphasis added.)
Nonetheless, I agree that this court should affirm those provisions in the trial court's judgment relating to mediation. Those provisions track almost verbatim the provisions of the Tennessee judgment relating to resolution of disputes that might arise in the future as to certain matters. Neither party to the Tennessee judgment successfully challenged those provisions in an appeal and they therefore became the law of this case. Cf. G.P., 841 So.2d at 1257. This court will affirm a judgment of a trial court on any valid legal ground. Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988).

III. Summer Visitation

Finally, I find more merit than does the main opinion in the mother's argument that the trial court abused its discretion by awarding summer visitation with the father that will prevent the mother from ever celebrating the children's birthdays with them. Indeed, in his reply brief, the father "accedes to changing" this portion of the trial court's judgment. Unlike the *582 main opinion, therefore, I would instruct the trial court on remand that it must modify that portion of its judgment pertaining to summer visitation so as to allow the mother to have physical custody of the children on their birthdays every other year.