Ginger Thompson ("the mother") and Jason Thompson ("the father") were married in January 1998; they had one child. In November 2005, the father sued for a divorce, seeking, among other things, to be awarded joint custody of the child; the mother answered the divorce complaint and counterclaimed for a divorce, seeking to be awarded sole physical custody of the child. Imogene Thompson, the child's paternal great-grandmother, sought to intervene in the divorce proceedings, stating as grounds in her petition to intervene that it was not in the best interest of the child to be placed in the custody of either the mother or the father; the great-grandmother indicated that she desired to file a complaint seeking custody or visitation. The trial court permitted the great-grandmother to intervene; however, the great-grandmother never filed a complaint for custody or for visitation.
The divorce proceedings were set for trial on May 4, 2006; after discussion among the parties, all agreed to a partial settlement of the issues pending before the trial court. The issues of custody, visitation, and child support were reserved for later adjudication. In the partial-settlement agreement, the great-grandmother was awarded visitation every weekend from 5:00 p.m. on Friday until 3:00 p.m. on Saturday.
The remaining issues were set for trial on November 2, 2006. On that date, the mother filed a motion to set aside the order granting the great-grandmother's petition to intervene, arguing that the great-grandmother was seeking visitation rights despite not having standing under the grandparent-visitation statute, codified at Ala. Code 1975, § 30-3-4.1. In addition, the mother noted that the great-grandmother had never filed a complaint seeking visitation or custody. The trial court heard the testimony of the mother and the great-grandmother at trial. At trial, the father stipulated that he would not be awarded any visitation and would pay no child support; the father was to plead guilty to an unspecified criminal charge and was to receive a 10-year prison sentence. After the trial, the trial court entered a judgment awarding the great-grandmother visitation as the "designee" of the father as follows: Thanksgiving Day from 2:00 p.m. to 7:00 p.m.; Christmas vacation from 2:00 p.m. Christmas Day to December 31 at 5:00 p.m.; and July 1 at 5:00 p.m. to July 7 at 5:00 p.m. The mother appeals from the judgment insofar as it awards the great-grandmother visitation. *Page 417 
The mother first argues, correctly, that the great-grandmother does not have standing pursuant to § 30-3-4.1 because she is not within the class of persons granted the right to seek grandparent visitation. See L.R.M. v. D.M.,962 So.2d 864, 875 (Ala.Civ.App. 2007). In pertinent part, Alabama's grandparent-visitation statute reads as follows:
 "(a) For the purposes of this section, the term `grandparent' means the parent of a parent of a minor child, the parent of a minor child's parent who has died, or the parent of a minor child's parent whose parental rights have been terminated when the child has been adopted pursuant to Section 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent and relative adoption.
 ". . . .
 "(c) Any grandparent may intervene in and seek to obtain visitation rights in any action when any court in this state has before it any question concerning the custody of a minor child, a divorce proceeding of the parents or a parent of the minor child, or a termination of the parental rights proceeding of either parent of the minor child, provided the termination of parental rights is for the purpose of adoption pursuant to Sections 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent or relative adoption."
§ 30-3-4.1.
 "`The right of grandparent visitation did not exist at common law but was instead created by legislative act.' Sanders v. Wright, 772 So.2d 470, 471
(Ala.Civ.App. 2000), quoting C.Y. v. C.L., 726 So.2d 733, 734 (Ala.Civ.App. 1999). The statutory right of grandparent visitation must be strictly construed; it cannot extend to persons who do not fit the definition specified by the Legislature. See Chavers v. Hammac, 568 So.2d 1252
(Ala.Civ.App. 1990); Shoemaker v. Shoemaker, 563 So.2d 1032 (Ala.Civ.App. 1990)."
T.R.S.S. v. R.S., 828 So.2d 327, 330
(Ala.Civ.App. 2002). The grandparent-visitation statute does not include great-grandparents within the definition of grandparent; that term is limited to the parent of the child's parent. § 30-3-4.1; L.R.M., 962 So.2d at 875. Thus, the great-grandmother did not have the right to intervene to seek grandparent-visitation rights, and the trial court's award of visitation to the great-grandmother cannot be upheld under § 30-3-4.1.[1]
However, the trial court's judgment indicates that the great-grandmother is exercising visitation with the child as the father's "designee." We have permitted a noncustodial parent to designate other family members to transport and visit with his children in his absence on one occasion. McQuinn v.McQuinn, 866 So.2d 570 (Ala.Civ.App. 2003). The father inMcQuinn was on active duty in the military and was stationed in Washington state. McQuinn,866 So.2d at 572. The trial court's original modification judgment inMcQuinn allowed the father to designate certain relatives to exercise his visitation when it was impossible or impractical for him to personally visit with the children; the trial court amended the judgment in response to the mother's postjudgment motion, permitting only the children's paternal grandfather to assist the father with transportation *Page 418 
for visits. Id. We reversed the trial court's amended judgment, holding that the father, a fit noncustodial parent, continued to have the right "to allow other suitable family members to visit with his children during his visitation periods even when he is unable to be present." Id. at 574. We rejected the mother's argument that allowing "designees" to visit with the child in the father's stead violated the grandparent-visitation statute, characterizing the issue not as one concerning the rights of the third parties to have visitation with the children but as one "involv[ing] the father's right, during his visitation periods, to determine with whom his children may visit." Id.
As the mother argues, this case does not involve a fit noncustodial parent's right to allow third parties to visit with a child in his stead. In fact, the father, by stipulation, was not awarded any visitation rights in the judgment, in part because he was pleading guilty to an unspecified criminal charge and was to be incarcerated. Although the father was not determined specifically to be unfit despite evidence indicating that he might have been an abusive husband and that he abused controlled substances, it is clear that he did not designate the great-grandmother as a person to exercise his visitation rights while he was otherwise unable to do so. We cannot affirm the trial court's judgment permitting the great-grandmother to be the father's "designee" when he was not awarded, or arguably entitled to, visitation.
The great-grandmother does not have standing pursuant to § 30-3-4.1 to seek grandparent-visitation rights. Because the father was awarded no visitation rights, the great-grandmother cannot be considered the father's "designee" for purposes of exercising his visitation rights in his stead. Thus, we reverse the trial court's judgment awarding the great-grandmother visitation rights and remand the cause for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
[1] The great-grandmother's petition to intervene indicated that neither parent was suited to have custody of the child, and, thus, we do not conclude that the trial court's decision to allow the great-grandmother to intervene to possibly seek custody was incorrect. However, the great-grandmother did not file a complaint seeking the custody of the child; in fact, she did not file a complaint or other pleading seeking visitation.