PITTMAN, Judge.
Kevin Michael Hamaker (“the father”) appeals from a judgment of the Shelby Circuit Court (“the trial court”) in a post-divorce action commenced by Carol Seales (“the grandmother”), the maternal grandmother of the father’s daughter (“the child”). We affirm.
Factual Background and Procedural History
Sometime before 2003, the father and Elizabeth Easter (“the mother”), the daughter of the grandmother, married; the mother subsequently gave birth to the child in 2003. The grandmother testified that the mother and the father had separated approximately one month after the child’s birth and-that, although the mother and the father had not divorced until 2005, the child had begun living primarily with the grandmother when the mother and the father separated.
The 2005 judgment dissolving the marriage of the mother and the father awarded the mother and the father, joint legal custody of the child, awarded the mother sole physical custody, and awarded the father visitation. However, the grandmother testified, that, despite the custody provisions of the divorce judgment, the child lived primarily with the grandmother until the child was nine, even during periods when the mother was not living with the grandmother.
In 2010, the father commenced a postdi-vorce action (“the 2010 action”) seeking sole physical custody of the child; the grandmother intervened in that action in order to seek sole physical custody. In 2012, shortly before the trial of the 2010 action, the father, the mother, and the grandmother reached an agreement to settle the claims pending in the 2010 action. They agreed that the father and the mother should be awarded joint legal custody, that the father should be awarded sole physical, custody, that the grandmother and her husband should be awarded visitation, that the mother should be awarded supervised visitation during the periods when the grandmother and her husband had visitation,'.'and that the grandmother and her. husband, should supervise the-mother’s visitation. Subsequently, the trial *35 court held a hearing at which the child’s guardian ad litem read the parties’ agreement into the record and the parties confirmed that they had agreed to its terms. The trial court, subsequently entered a judgment in August 2012 (“the 2012 judgment”), which incorporated most of the parties’ agreement, although it failed to award the grandmother’s husband visitation or to authorize him to supervise the mother’s visitation. The portion of the 2012 judgment pertinent to this appeal provided:
“The Court finds that the agreement reached by the parties is in the best interest of the minor child, and it is therefore ORDERED, ADJUDGED and DECREED, as-follows:
“1. Custody:
“[The father] and [the mother] shall have joint [legal] custody of the minor child .... [The father] shall have primary physical custody of the child. The minor child will attend Shades Cahaba Elementary School in Homewood, Alabama,
“2. Visitation and Holiday Visitation:
“[The grandmother] and [the mother] are awarded visitation with the minor child. [The mother’s] visitation shall be exercised in conjunction with the [grandmother’s] (provided such visitation does not violate any [Department of Human Resources] Safety Plan and/or Court Order). [The mother’s] visitation shall be agreed to and arranged between [the mother] and [the grandmother]. [The mother’s] visitation shall be supervised by [the grandmother], and [the mother] shall have .a minimum of five (5) hours supervised visitation per month to be had during the times the [grandmother] exercise[s] visitation. Visitation with the minor child will occur during the following, times:
‘‘2(a). The 1st and 3rd weekend of each month beginning at 3:00 p.m. on Friday until 6:00 p.m. Sunday. If Monday or Friday of the visitation weekend is a holiday, said visitatipn shall include the day of the-holiday.>
“2(b). The standard visitation schedule above shall not apply during the following visitation periods, unless otherwise agreed to by the parties, as follows:
“A. Summer: Three (3) non-consecutive seven (7) day periods, and/or any other that can be agreed upon. [The grandmother] will notify [the father] by April 30, 2012 of which weeks they intend to exercise visitation. Summer shall be defined as the period from June 1 through August 20.
“B. Christmas: Christmas visitation shall be from 3:00 p.m, on December 26 until December 30th at 6:00 p.m.
“C. Thanksgiving: In even numbered years On the week of- Thanksgiving from 6:00 p.m. on Wednesday until 6:00 p.m. the following Friday at 6:00 p.m. During said years and when the regularly scheduled weekend visitation period does not fall on the weekend following Thanksgiving Day, the third weekend of November may be substituted for , the weekend immediately following Thanksgiving.
“D. Spring Break: In odd numbered years during the week of Spring Break from 6:00 p.m. on Friday until 6:00 p.m. the following Friday.
«
“9. Each party shall provide the other with reasonable telephone contact with the minor child while exercising custody or visitation.”
(Emphasis added.)
In December • 2012, the grandmother, acting pro se, filed a petition asking the trial court to hold the father in contempt *36 for violating the 2012 judgment and to “rewrite” the 2012 judgment, which, according to the grandmother’s testimony, had been prepared by the father’s sister, who was an employee of the father’s counsel, and did not contain all the provisions that the trial-court judge had stated in open court that he wanted included in the judgment. The father filed an answer denying the allegations of the grandmother’s petition. In addition, he filed a counterclaim against the grandmother and a cross-claim against the mother in which he asked the trial court to modify the 2012 judgment by terminating the mother’s legal custody, by suspending the mother’s supervised visitation, and by terminating the grandmother’s visitation. Thereafter, the grandmother answered the father’s counterclaim.
The trial court held a bench trial at which it received evidence ore tenus in August 2015. In September 2015, the trial court entered a judgment (“the 2015 judgment”) ruling on the parties’ claims. In pertinent part, the 2015 judgment stated:
“It is therefore ORDERED, ADJUDGED and DECREED as follows:
“1. The court finds that at various times all parties have failed to comply with previous orders of this court.
“2. The Court finds that at various times all parties have engaged in conduct, in the presence of the minor child, that is in violation of this court’s previous orders and instructions from the bench.
“3. The court finds that at various times all parties have failed to conduct themselves in such a way that serves the best interest of the minor child.
“4. The visitation schedule of the [grandmother] and Mother shall be modified as set out in Exhibit ‘A’ attached hereto and made a paid; of this order.
“5. All other aspects of previous orders of this court shall remain in effect unless modified herein by Exhibit ‘A.’
“6. All other requested relief, not stated herein, is hereby DENIED.”
Exhibit “A” attached to the 2015 judgment was the trial court’s standard visitation schedule (“the standard visitation schedule”). In pertinent part, the standard visitation schedule stated:
“The custodial/visitation periods as provided herein are intended by the Court to be the minimum to which each parent is entitled. The parties are encouraged to extend such periods, as herein allowed, as the child grows older, and as may be in the best interest of said child, and to reschedule, by mutual agreement, any custodial/visitation period which is inconvenient for the parties or interferes -with the child’s extracurricular activities, with both parties keeping in mind the best interest of the child.
[[Image here]]
“The party exercising visitation shall have the following custodial/visitation periods:
“A. Weekends: The first and third weekends of each month from 6:00 p.m. on the first and third Friday of each month until 6:00 p.m. on the following Sunday. Should either a Federal or State holiday, or the child’s school schedule, excuse the child from attendance at school on the Friday beginning the custodial/visitation period and/or on the Monday following said period, the first and third weekend custodial/visitation period shall be extended to include said Friday and/or Monday. The Friday custodial/visitation period shall begin at 9:00 a.m. The Monday custodi *37 al/visitation period shall end at 6:00 p.m. The custodial/visitation period specified in this paragraph shall be superseded by the specific custodial/visitation periods set forth in the following paragraphs B-J.
B. Christmas: Christmas Holidays in odd numbered years beginning at 6:00 p.m. on the first day of the school holiday season as set out in the school calendar until 3:00 p.m. Christmas Day. In even numbered years from 3:00 p.m. Christmas Day until 6:00 p.m. on the following January 2nd.
C. Thanksgiving: In even numbered years on the week of Thanksgiving from 4:00 p.m. on Wednesday afternoon until 6:00 p.m. the following Friday. During said .years when the regularly scheduled weekend custodial/visitation period does not.fall on the weekend following Thanksgiving Day, the third weekend of November may be substituted for the weekend immediately following Thanksgiving Day.
D. Easter: In even numbered years from 6:00 p.m. on the Saturday before Easter until Easter Sunday at 6:00 p.m.
E. Summer: Two (2) fourteen day periods during the school summer break each year, at times to be selected by the parent exercising custodial/visitation period upon written notice to the other party at least thirty (30) days in advance. Such periods shall be separated by at least two (2) weeks, and shall be scheduled so that the child is returned to the primary residence at least one week before the beginning of the fall school term.
“F. Spring break: Spring school break in even numbered years as set by the school calendar. Said spring break custodial/visitation period shall commence at 6:00 p.m. on the Friday beginning the spring break, and conclude at 6:00 p.m. on the following Friday. This custodial/visitation period shall take the place of the weekend custodial period closest to spring break.
“G. Fall Break: Fall school break in odd numbered years as set by the school calendar. Said fall break custodial/visitation period shall commence at 6:00 p.m. on the first day of the fall break, and conclude at 3:00 p.m. on the last day of the fall break. This custodial/visitation period shall take the place of the weekend custodial period closest to fall break.
“H. Father’s Day: The Father shall have the right of custodial/visitation period with the child for Father’s Day of each year. Said custodial/visitation period shall begin at 4:00 p.m. on the Saturday pri- or to Father’s Day and shall end no later than 6:00 p.m. on Father’s Day.
“E. Mother’s Day: The Mother shall have the right of custodial visitation with the child for Mother’s Day of each year. Said custodial/visitation period shall begin at 4:00 p.m. on the Saturday prior to Mother’s Day and shall end no later than 6:00 p.m. on Mother’s ■ Day.
“J. Child’s Birthday: In even numbered years, on the child’s birthday from 4:00 p.m, until 7:30 a.m. the following day. In odd num *38 bered years, on the child’s birthday from 4:00 p.m. to 8:00 p.m.”
The father timely filed a Rule 59(e), Ala. R. Civ. P., motion to alter,- amend, or vacate the 2015 judgment, which he subsequently amended. The trial court held a hearing regarding that motion and, thereafter, entered an order denying that motion but providing as follows:
“4. The court does amend [the 2015 judgment] to include language similar to the court’s [2012 judgment] in that all visitation exercised by the mother ... shall be supervised by the maternal grandmother....
“5. The court notes that the parties, by agreement, granted visitation to the [grandmother] by [the 2012 judgment]. The [2012 judgment] states, in part, as follows:
“1... and the Court was informed that an agreement had been reached between all parties to resolve the disputed matters as to custody and visitation regarding the minor child ... ’
“The order also states, in part:
“ ‘2. Visitation and Holiday Visitation: “‘[The grandmother] and [the mother] are awarded visitation with the minor child.’ ”
Thereafter, ■ the father timely appealed from the 2015 judgment.
Standard of Review
‘““‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed- unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain.its judgment.’” Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala. 2007).
Analysis
The father’s first two' arguments are based on the same premise, i.e., that, unless he was found to he an unfit parent, he had a fundamental right to determine how much time the child should spend with the grandmother. Based on that premise, he argues (1) that the trial court, by denying his claim seeking the termination of the grandmother’s visitation, infringed upon his fundamental right to determine how much time the child should spend with the grandmother and (2) that the trial court erred in disregarding his decision that the grandmother’s visitation should be terminated in the absence of a finding that he was an unfit parent.
It is. true that a fit parent has a fundamental right to make decisions regarding the care, custody, and control of his or her child. See Ex parte E.R.G., 73 So.3d 634, 642-47 (Ala. 2011). However, in the present case, the father exercised his fundamental right to make such decisions by voluntarily agreeing in 2012 that the grandmother could have court-ordered visitation, and, pursuant to that agreement, the trial court included an award to *39 the grandmother of court-ordered visitation in the 2012 judgment. The father did not appeal from that judgment, and it became the law of the case with respect to the issue whether the grandmother was entitled to court-ordered visitation, and the trial court in the present action lacked jurisdiction to determine ab initio whether the grandmother should have been granted visitation rights in the 2012 judgment. See N.T. v. P.G., 54 So.3d 918, 919-21 (Ala. Civ. App. 2002). In N.T. v. P.G., the Jefferson Juvenile Court (“the juvenile court”) had. found three children dependent and had placed each of them in the custody of a nonparent custodian (“the former custodians”). 54 So.3d at 919. N.T., the three children’s mother, subsequently proved that she had rehabilitated herself, which resulted in the juvenile court’s entering a judgment on August 5, 2009, that restored the three children to N.T.’s custody and granted the former. custodians “standard visitation.” Id. N.T. did not appeal from the August 5, 2009, judgment. Id. On November 19, 2009, N.T. filed a “Motion to Amend and Close Case” in which she requested that the juvenile court amend the August 5, 2009, judgment to provide that the former custodians’ visitation would be at the discretion of N.T. Id. The juvenile court treated N.T.’s motion, which was filed after the 14-day period for filing a postjudgment motion in a juvenile case had expired, see Rule 1(B), Ala. R. Juv. P., as a petition to modify the August 5, 2009, judgment based on changed circumstances. The juvenile court held a trial and entered a judgment on December 9, 2009, modifying the former custodians’ visitation to one weekend per month. Id. N.T. then appealed from the December 9, 2009, judgment and challenged that judgment on the ground that it violated her custodial rights and her constitutional rights. 54 So.3d,at 919-20. Rejecting N.T.’s argument and affirming the December 9, 2009, judgment, this court stated:
“On appeal, [N.T.]- argues solely that the juvenile court erred in granting- any visitation to the former custodians because, she says, such an order violates her custodial rights, see Shoemaker v. Shoemaker, 563 So.2d 1032, 1033 (Ala. Civ. App. 1990) (holding that parent has custodial right to prevent visitation with nonparent), and her constitutional rights, see Troxel v. Granville, 530 U.S. 57, 78-79, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (holding that custodial parent has constitutional right to determine with whom children associate). We note, however, that the juvenile court originally granted visitation to the former custodians in its August 5, 2009, judgment. [N.T.] did not appeal from that judgment. Instead, more than three months later, on November 19, 2009, the mother filed what effectively amounted to a petition to modify the former custodians’ visitation, rights.
“On a petition to modify visitation, a court does not reexamine the evidence to determine if its'original judgment was correct; rather, it decides whether, modification is warranted based on changed •circumstances. In G.P. v. A.A.K., 841 So.2d 1252 (Ala. Civ. App. 2002), the grandparents gained visitation rights pursuant to a Kentucky judgment. [One of the parents (‘the parent’) ] then moved an Alabama court.to modify that judgment, arguing that the original Kentucky, judgment violated her constitutional rights under Troxel, supra. The Alabama court held that ‘Alabama’s .grandparent-visitation statute, Ala. Code 1975, § 30-3-4.1, was unconstitutional’: and ‘declined to enforce or to modify the grandparents’- visitation’ rights, and the grandparents appealed. 841 So.2d .at 1254 (emphasis omitted). This court noted that, the Kentucky *40 judgment was conclusive as to any right of the grandparents to visit and that, if the [parent] had any constitutional objections to that judgment, she should have pursued them in relation to that judgment. This court held that the [parent] could not use a petition to modify the grandparents’ visitation rights filed in an Alabama court as a means of belatedly raising those objections. This court stated:
“ ‘[T]he fact that the Houston Circuit Court had jurisdiction to modify the grandparents’ visitation rights as the [parent] requested does not mean that it had jurisdiction to redetermine, ab initio, whether the grandparents should have been granted visitation rights—the previous visitation judgment “remain[ed] a custody determination of the state that issued it.’”
“841 So.2d at 1257 (quoting Ala. Code 1975, § 30-3B-303 (Official Comment)).
“Although this case does not involve issues regarding interstate jurisdictional conflict, the reasoning in G.P. applies equally to this case. [N.T.] should have raised any constitutional or other objections she had to the judgment awarding visitation rights to nonparents at the time that judgment was entered on August 5, 2009. See E.H.G. v. E.R.G., 73 So.3d 614, 622 (Ala. Civ. App. 2010) (recognizing right of fit parent to prevent visitation by grandparents, which right can only be overridden by court based on evidence that the prevention of the visitation would harm the child). However, [N.T.] did not file a timely postjudgment motion or an appeal raising those objections. Instead, she waited until November 19, 2009, to file a ‘motion to amend’ the August 5, 2009, judgment. At that point, any error committed by the juvenile court in granting the former custodians visitation rights in the August 5, 2009, judgment had become the law of the case, subject to modification only upon a showing of changed circumstances. See McQuinn v. McQuinn, 866 So.2d 570, 575 (Ala. Civ. App. 2003) (noting that, since mother did not appeal from judgment awarding the child’s former stepfather visitation rights, the former stepfather’s ‘right ... to visitation with the stepson became the law of the case’ ‘except as it may be subject to modification upon a change in circumstances’).
“On appeal from one judgment, an appellate court cannot consider arguments relating to errors committed in a previously entered final judgment from which no appeal was taken. See Moody v. Myers, 268 Ala. 177, 105 So.2d 54 (1958). Thus, this court is foreclosed from addressing the arguments raised by [N.T.] relating to the correctness of the August 5, 2009, judgment. Our review is confined to arguments directed only to the judgment entered on December 9, 2009.”
Id. at 919-21.
The present case is analogous to N.T. v. P.G., and the reasoning of N.T. v. P.G. is equally applicable to the present case. In the present case, the 2012 judgment granted the grandmother visitation rights, and the father did not appeal from that judgment. “At that point, any error committed by the [trial court] in granting the [grandmother] visitation rights in the [2012] judgment had become the law of the case, subject to modification only upon a showing of changed circumstances.” N.T. v. P.G., 54 So.3d at 920. Therefore, we reject the father’s first two arguments.
The father’s third argument is that the trial court’s denial of his claim seeking to terminate or modify the grandmother’s visitation was plainly and palpably wrong and contrary to the great weight of the *41 evidence. In support of this argument, the father cites evidence indicating that he and the grandmother had not been on cordial terms even before the entry of the 2012 judgment and that, after the entry of the 2012 judgment, the grandmother had, on occasion, engaged in conduct that was not in the best interest of the child. However, the trial court expressly found that the father had also engaged in conduct that was not in the best interest of the child:
“1. The court finds that at various times all parties have failed to comply with previous orders of this court.
“2. The Court finds that at various times all parties have engaged in conduct, in the presence of the minor child, that is in violation of this court’s previous orders and instructions from the bench.
“3. The court finds that at various times all parties have failed to conduct themselves in such a way that serves the best interest of the minor child.”
The evidence regarding the father’s and the grandmother’s conduct was in dispute. The father introduced evidence tending to prove that the grandmother had written him unpleasant e-mails; had expressed anger toward him; had defied his rule forbidding the child from having access to social media; had discussed the visitation dispute with the child; had, on occasion, delegated her responsibility for supervising the mother’s visitation to other people; and had, on one occasion, left the child with the mother in a public place in the absence of any supervision while the grandmother took another one of her grandchildren to the bathroom. On the other hand, the grandmother introduced evidence tending to prove that the father had sometimes denied the grandmother visitation when she was entitled to it under the terms of the 2012 judgment, had prevented the grandmother from having telephone contact with the child during his custodial periods, had prevented the grandmother from attending some of the child’s school activities and extracurricular activities despite the child’s desire that the grandmother attend them, had refused to allow the child to use a softball bat the grandmother had bought for the child, and had been uncooperative in general in his dealings with the grandmother regarding her visitation. Each party introduced evidence tending to minimize his or her violations of the 2012 judgment and to amplify the violations of the other. Our review of the evidence before the trial court indicates that the trial court’s findings that both parties had, on occasion, violated the 2012 judgment and had acted contrary to the child’s best interest are amply supported by that evidence.
Moreover, the trial court could reasonably have inferred from the evidence that, because the child had lived primarily with the grandmother for the first nine years of the child’s life, the child and the grandmother had a strong emotional bond and, therefore, that terminating.or reducing the grandmother’s visitation would be contrary to the child’s best interest. Accordingly, we reject the father’s argument that the trial court’s denial of his claim seeking to terminate or modify the grandmother’s visitation was plainly and palpably wrong and contrary to the great weight of the evidence.
Finally, the father argues that the trial court erred in substituting the standard visitation schedule for the visitation schedule set forth in the 2012 judgment because, he says, it resulted in an increase in the grandmother’s visitation in the absence of evidence justifying such an increase.
“ ‘[T]he trial court has broad discretion in deciding on visitation rights of the noncustodial parent. Wallace v. *42 Wallace, 485 So.2d 740 (Ala. Civ. App. 1986). This discretion applies to modification proceedings as well as to the original custody proceeding. Id. “When the issue of visitation is determined after oral proceedings, the trial court’s determination of the issue will-not be -disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 620 So.2d 512 (Ala. Civ. App. 1987).” Dominick v. Dominick, 622 So.2d 402, 403 (Ala. Civ. App. 1993).’
“Flanagan v. Flanagan, 656 So.2d 1228, 1230 (Ala. Civ. App. 1995).”
Griffin v. Griffin, 159 So.3d 67, 70 (Ala. Civ. App. 2014).
In Springer v. Damrich, 993 So.2d 481, 489 (Ala. Civ. App. 2008), this court affirmed a judgment insofar as' it had modified the visitation schedule set forth in a divorce judgment, stating:
“ ‘ “The determination of proper visitation ... is -within the sound discretion of the trial court, and that court’s determination should not be reversed by-an appellate court absent a showing of an abuse of discretion.” Ex parte Bland, 796 So.2d [340,] 343 [ (Ala. 2000) ]. “The primary consideration in setting visitation rights is the b¿st interest of the child. Each'child' visitation case must be decided on its own facts and 'circumstances.” DuBois v. DuBois, 714 So.2d 308, 309 (Ala. Civ. App. 1998) (citation omitted).’
“Williams v. Williams, 905 So.2d 820, 830 (Ala. Civ. App. 2004).
“In this ease, over the five-year span of the postdivorce litigation, the trial-court received a vast amount of information regarding the visitation plan that served the best interests of the children. - Based on its unique, perspective, the court determined from the heavily conflicting evidence, that its original visitation order, should be-modified. We note that the [modified] visitation schedule is not dramatically different from the schedule-set-forth in the divorce judgment. Based on the foregoing and on our limited standard of review on this issue, we cannot conclude that the trial court exceeded] its discretion in- this regard.”
Like the evidence before the Jefferson Circuit Court in Springer v. Damrich, the evidence before the trial court in the present case was in conflict regarding the parties’ conduct and the amount of visitation that would serve the child’s best interest. Like the Jefferson Circuit Court, the trial court - determined,- based on conflicting evidence it received ore tenus, that the standard visitation schedule should be substituted for the original visitation schedule set forth in the 2012 judgment. Moreover, we note that, as was the case in Springer v. Damrich, 993 So.2d at 489, “the- [modified] visitation schedule is not dramatically different from the [visitation] schedule set forth in the [2012] judgment”—the modified schedule merely grants the grandmother an additional weelc in the summer and a few holidays that she had not been granted in the 2012 judgment. Given these circumstances, we cannot conclude that the trial court improperly.exercised its discretion in modifying the visitation schedule. .See Springer v. Damrich, Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
Thompson, P.J., and Thomas, Moore, and Donaldson, JJ., concur.