2013 COA 13

**In re the Parental Responsibilities Concerning M.D.E., a Child,**

and

**Concerning Bernice M. Spencer, Intervenor–Respondent,**

and

**Scott D. Rottler, Petitioner.**

No. 12CA2482.

Colorado Court of Appeals, Div. A.

Jan. 31, 2013.

Bernice M. Spencer, Pro Se.

Law Office of Michael Grills, Michael Grills, Northglenn, Colorado, for Petitioner.

Opinion by Judge J. JONES.

¶ 1 In this dissolution of marriage proceeding, Scott D. Rottler (father) challenges the district court's order allowing Bernice M. Spencer (great-grandmother) to intervene and seek "grandparent" visitation of father's child (great-grandmother's great-grandchild) under section 19–1–117, C.R.S.2012. We

hold, consistent with the General Assembly's express definition of "grandparent" and the plain language of section 19–1–117, that great-grandmother is not a grandparent within the meaning of section 19–1–117. Therefore, because she does not have standing to seek visitation under that statute, we vacate the district court's order.

## I.  Background

¶ 2 In May 2009, the child's mother filed a petition for allocation of parental responsibilities as to the child. *See* § 14–10–123, C.R.S. 2012. Several months later, the court entered permanent orders and a parenting plan resolving the dispute between father and mother. The orders and parenting plan did not mention great-grandmother.

¶ 3 More than six months later, great-grandmother filed a motion to intervene in the proceeding and a motion for "grandparent" visitation. In both motions, great-grandmother alleged that she was the child's great-grandmother, "the grandmother of the child's mother." She sought leave to intervene and visitation under section 19–1–117, asserting that because the statute provides a means for grandparents to seek visitation of grandchildren, by "logical extension" great-grandparents should be allowed to seek visitation.

¶ 4 As relevant here, section 19–1–117 provides:

> **Visitation rights of grandparents.** (1) Any grandparent of a child may, in the manner set forth in this section, seek a court order granting the grandparent reasonable grandchild visitation rights when there is or has been a child custody case or a case concerning the allocation of parental responsibilities relating to that child.... (2) ... A hearing shall be held if either party so requests or if it appears to the court that it is in the best interests of the child that a hearing be held.... If, at the conclusion of the hearing, the court finds it is in the best interests of the child to grant grandchild visitation rights to the petitioning grandparent, the court shall enter an order granting such rights.

¶ 5 Father opposed great-grandmother's intervention. He argued that because great-grandmother is not a grandparent, as that term is commonly understood, she lacks standing to proceed under section 19–1–117. Great-grandmother responded that the term " 'grandparent' subsumes and encompasses 'great-grandparent,' " and that drawing a distinction between the two would be illogical because people now live longer and healthier lives than they did in times past.

¶ 6 The magistrate to whom the case had been assigned granted great-grandmother's motion to intervene, while reserving ruling on the motion for visitation. The magistrate acknowledged that the term "grandparent" as used in section 19–1–117 is statutorily defined as "a person who is the parent of a child's father or mother, who is related to the child by blood, in whole or by half, adoption, or marriage," with an exception not relevant here. *See* § 19–1–103(56)(a), (b), C.R.S.2012. But the magistrate concluded that, because the Children's Code is to be liberally construed to serve the child's best interests, *see* § 19–1–102(2), C.R.S.2012, great-grandmother should be allowed to intervene, and further inquiry was warranted to determine whether granting great-grandmother visitation rights would be in the child's best interests.

¶ 7 Father sought review of the magistrate's order under C.R.M. 7. The district court upheld the magistrate's ruling, relying, as had the magistrate, on the principle that the Children's Code is to be liberally construed to serve the child's best interests.

¶ 8 Father sought review of the district court's order in this court pursuant to section 13–4–102.1, C.R.S.2012, and C.A.R. 4.2. We granted father's petition. The matter has been fully briefed.

## II.  Discussion

¶ 9 Whether great-grandmother has a right to intervene to seek visitation of the child depends entirely on whether she is a "grandparent" within the meaning of section 19–1–117. This presents an issue of statutory interpretation, which we review de novo. *Associated Gov'ts of Northwest Colo. v. Colo. Pub. Utils. Comm'n,* 2012 CO 28, ¶ 11, 275 P.3d 646.

¶ 10 In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent. *Hassler v. Account Brokers of Larimer Cnty., Inc.,* 2012 CO 24, ¶ 15, 274 P.3d 547; *Core–Mark Midcontinent, Inc. v. Sonitrol Corp.,* 2012 COA 120, ¶ 43, 300 P.3d 963, 2012 WL 2994956. We look first to the statutory language. If the meaning of a particular statutory term is at issue, and the General Assembly has clearly defined that term, we must apply that definition. *People v. Swain,* 959 P.2d 426, 429 (Colo.1998); *R.E.N. v. City of Colo. Springs,* 823 P.2d 1359, 1364 (Colo.1992). If the General Assembly has not defined that term, we apply its plain and ordinary meaning, taking into account the entire relevant statutory context. *See Hassler,* ¶ 15; *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010). We resort to other principles of statutory construction only if we determine that the defined or plain and ordinary meaning of the term is ambiguous. *See Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1089 (Colo.2011); *Jefferson Cnty. Bd. of Equalization,* 241 P.3d at 935.

¶ 11 As noted, the General Assembly has defined the term "grandparent" for purposes of section 19–1–117. § 19–1–103(56). That definition is clear and unambiguous. As most relevant here, it limits the meaning of grandparent to "a person who is the parent of a child's father or mother ...." § 19–1–103(56)(a). Thus, it plainly excludes great-grandparents, who are not parents of a child's father or mother but grandparents of a child's father or mother. § 19–1–103(82)(a), C.R.S.2012 (defining "parent"· as "either a natural parent of a child ... or a parent by adoption"); *see also* § 19–1–117(1)(c) (referring to "the child's parent, who is the child of the grandparent").[1]

¶ 12 We must apply this clear definition as written. *Swain,* 959 P.2d at 429; *R.E.N.,* 823 P.2d at 1364; *Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 554 (Colo.App.1998); *see generally* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47:7, at 298–99 (7th ed. 2007); *cf. In re D.C.,* 116 P.3d 1251, 1253–54 (Colo.App.2005) (holding that a grandparent may not seek visitation unless there has been a child custody case or a case concerning the allocation of parental responsibilities; applying the plain meaning of § 19–1–117). Accordingly, we conclude that great-grandmother is not a grandparent within the meaning of section 19–1–117, and therefore does not have standing to seek visitation rights.[2]

¶ 13 We acknowledge that the General Assembly has directed that the Children's Code, of which section 19–1–117 is a part, is to be "liberally construed to serve the welfare of children and the best interests of society." § 19–1–102(2); *see C.S. v. People,* 83 P.3d 627, 635 (Colo.2004). And we acknowledge that one of the purposes of the Children's Code is "[t]o preserve and strengthen family ties whenever possible ...." § 19–1–102(1)(b), C.R.S.2012. But, for two reasons, we conclude that this does not dictate a different result.

¶ 14 First, section 19–1–117 gives rise to concerns calling into question whether it should be liberally construed. In *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the Supreme Court struck down a visitation statute because it unduly impinged on parents' fundamental right to make decisions concerning the care, custody, and control of their children. In *In re Adoption of C.A.,* 137 P.3d 318 (Colo.2006), the Colorado Supreme Court considered the con-

---

1. We also observe that the plain and ordinary meaning of grandparent is "a parent's parent." *Webster's Third New International Dictionary* 988 (2002); *see Hammons v. Jenkins–Griffith,* 764 N.E.2d 303, 305–06 (Ind.Ct.App.2002) (plain meaning of "grandparents" does not include great-grandparents; construing visitation statute); *Skov v. Wicker,* 272 Kan. 240, 32 P.3d 1122, 1127–28 (2001) (same); *Cole v. Thomas,* 735 S.W.2d 333, 334–35 (Ky.Ct.App.1987) (same).

2. Every other court to have considered this issue has reached the same conclusion where the stat-

ute in question did not expressly give great-grandparents a right to seek visitation. *Chavers v. Hammac,* 568 So.2d 1252, 1253 (Ala.Civ.App. 1990); *Hammons,* 764 N.E.2d at 305–06; *Skov,* 32 P.3d at 1127–28; *Cole,* 735 S.W.2d at 334–35; *David L. v. Tracey L.,* 230 A.D.2d 869, 646 N.Y.S.2d 703, 704 (1996). Some states' visitation laws expressly make provision for great-grandparent visitation. *E.g.,* Ariz.Rev.Stat. § 25–409 (2013); Ark.Code Ann. § 9–13–103 (2009); Idaho Code Ann. § 32–719 (1994); 750 Ill. Comp. Stat. 5/607 (2012); N.D. Cent.Code § 14–09–05.1 (2009).

stitutionality of section 19–1–117 in light of *Troxel.* The court, acknowledging that section 19–1–117 impinges on parents' fundamental rights, upheld the statute, but only after holding that parents' wishes concerning third-party visitation must be given "special weight," and that a grandparent must prove by clear and convincing evidence that a parental decision to disallow grandparent visitation is not in the child's best interests. *Id.* at 324–28.

¶ 15 Because visitation statutes such as section 19–1–117 impinge on parents' fundamental rights, courts in other jurisdictions have held that grandparent visitation statutes must be strictly construed. *E.g., Thompson v. Thompson,* 984 So.2d 415, 417 (Ala.Civ.App.2007); *Skov,* 32 P.3d at 1127–28; *see also David L.,* 646 N.Y.S.2d at 704. In other contexts, Colorado appellate courts have held that statutes which impinge on constitutional rights must be narrowly construed. *E.g., Urevich v. Woodard,* 667 P.2d 760, 763 (Colo.1983) ("statutes that limit the power of the people to initiate legislation are to be closely scrutinized and narrowly construed"); *cf. Peters v. Smuggler–Durant Mining Corp.,* 930 P.2d 575, 580 (Colo.1997) ("Statutes that are in derogation of property rights, as with other rights under the common law, must be strictly construed."). It is therefore doubtful whether the principle of liberal construction can be applied to section 19–1–117.

¶ 16 Second, the principle of liberal construction would not aid great-grandmother's cause in any event. That principle may not be invoked to alter the plain meaning of a statute or to extend the application of its provisions beyond the clear limits of their reach. *See Denver United States Nat'l Bank v. People,* 29 Colo.App. 93, 97, 480 P.2d 849, 851 (1970); *see also Henderson v. City of Fort Morgan,* 277 P.3d 853, 855 (Colo.App. 2011) (principle of liberal construction does not allow a court to interpret a statute to mean something it does not say); *Int'l Truck & Engine Corp. v. Colo. Dep't of Revenue,* 155 P.3d 640, 642 (Colo.App.2007) (court may not modify clearly defined statutory terms); *In re Adoption of T.K.J.,* 931 P.2d 488, 492–93 (Colo.App.1996) ("liberal construction does not permit a court to rewrite the statute; instead, this principle may be used only to uphold the beneficial intent of the General Assembly when the wording of the statute creates a doubt"); *see generally* 3 *Statutes and Statutory Construction* § 58:1, at 104, § 58:2, at 109, § 58:5, at 143.

¶ 17 Finally, we reject great-grandmother's assertion, accepted by the district court, that no logical reason limits the application of section 19–1–117 to parents of a child's parents. As noted, section 19–1–117 impinges on parents' fundamental right to make decisions concerning the care, custody, and control of their children. Thus, for the General Assembly to have limited the statute's application to relatives who, generally speaking, are likely to have the next closest relationship with a child, is entirely rational. Further, a child can typically have only four grandparents, but could have eight great-grandparents. By limiting section 19–1–117, the General Assembly rationally reduced the numbers of persons who could seek to interfere with the parents' fundamental right. *See generally HealthONE v. Rodriguez,* 50 P.3d 879, 896 (Colo.2002) (upholding legislative action that "has a rational [relationship] to a legitimate governmental objective").

¶ 18 The order is vacated.

Judge WEBB and Judge GABRIEL concur.