2015 CO 38

Gary S. ROUP, Petitioner

v.

COMMERCIAL RESEARCH, LLC, Respondent

Supreme Court Case No. 14SC50

Supreme Court of Colorado.

June 1, 2015

Petitioner: Gary S. Roup, Pro Se, Aspen, Colorado.

Attorneys for Respondent: Stokes & Wolf, P.C., James R. Wolf, Denver, Colorado.

Attorneys for Amici Curiae Colorado Creditor Bar Association and Associated Collection Agencies, Inc.: Weinstein, Pinson & Riley, P.S., Kimberly L. Martinez, Denver, Colorado, Greenberg & Sada, P.C., Alan Greenberg, Englewood, Colorado.

Attorneys for Amicus Curiae Colorado Public Employees' Retirement Association: Public Employees' Retirement Association, Adam L. Franklin, General Counsel, Kimberly K. Gardner, Senior Staff Attorney, Megan M. Westberg, Staff Attorney, Denver, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 The issue in this case is whether a Health Savings Account ("HSA") qualifies as a "retirement plan" for the purposes of section 13–54–102(1)(s), C.R.S. (2014), which exempts certain property from garnishment.[1] We hold that an HSA is not a "retirement plan" within the meaning of Colorado's exemption statute. An HSA is not intended to replace income lost as a result of retirement; it is intended to cover medical costs incurred at any point during a person's lifetime. The General Assembly has not chosen to provide an exemption for HSAs in the relevant statutes. We therefore affirm the judgment of the court of appeals.

## I.

¶ 2 Commercial Research, LLC ("Creditor") obtained an assignment of a default judgment that had been entered against Gary S. Roup in a Texas court. Creditor then filed the judgment in Colorado and began collection proceedings against Roup's assets, including $3,729.24 held in an HSA. Roup asserted these funds were exempt from attachment or garnishment because his HSA is a retirement plan under section 13–54–102(1)(s), which exempts certain types of property—including funds held in any "retirement plan"—from levy and sale.

¶ 3 The trial court determined that an HSA is not a retirement plan, reasoning that an HSA merely permits individuals to defer income on a tax-exempt basis to pay medical expenses. Concluding that no authority supported exempting Roup's HSA from garnishment, the trial court ordered the funds to be released to Creditor.

¶ 4 Meanwhile, during the trial court proceedings, Roup filed for bankruptcy and was granted a discharge of the underlying judg-

---

1. We granted certiorari in *Commercial Research, LLC v. Roup,* 2013 COA 163, —— P.3d ——, to review the following issue: "Whether a health savings account that meets the requirements of 26 U.S.C. section 223 (2006) qualifies as a 'retirement plan' for purposes of section 13–54–102, C.R.S. (2013), which exempts certain property from garnishment."

ment. Roup had appealed the trial court's order denying his exemption, but the court of appeals remanded to the trial court the question of whether the intervening bankruptcy made the issue moot. On remand, the trial court ruled that even though the bankruptcy discharged the underlying judgment, the discharge did not extinguish Creditor's garnishment because Roup had not taken any affirmative step toward extinguishing the lien. *See, e.g., In re Haberman,* 516 F.3d 1207, 1209 (10th Cir.2008) ("[L]iens generally pass through bankruptcy unaffected . . . ."); *In re Deutchman,* 192 F.3d 457, 460 (4th Cir.1999) ("In order to extinguish or modify a lien, the debtor must take some affirmative step toward that end.").

¶ 5 Returning to Roup's claim of exemption on appeal, a split panel of the court of appeals affirmed the trial court, concluding that the plain meaning of the term "retirement plan," as used in the exemption statute, excludes HSAs. *Commercial Research, LLC v. Roup,* 2013 COA 163, ¶ 22, — P.3d —. The majority reasoned that "the plain meaning of 'retirement plan' is, essentially, a plan intended to provide an income to a person after that person retires from a career. Put another way, it is a plan intended to replace, at least in part, an employee's loss of income attributable to retirement." *Id.* at ¶ 15. The majority then held that HSAs are not "retirement plans" because HSAs can be used for medical expenses at any point during beneficiaries' lifetimes, not only upon retirement. *Id.* at ¶ 17.

¶ 6 In dissent, Judge Terry determined that the term "retirement plan" is ambiguous as applied to HSAs and therefore turned to various aids of statutory construction. *Id.* at ¶¶ 26–35 (Terry, J., dissenting). First, she examined language in the Public Employees' Retirement Act ("PERA") to construe the exemption statute. *Id.* at ¶¶ 28–30. PERA defines "salary" to include "amounts deducted from pay for a health savings account . . . or any other type of retirement health savings account program." § 24–51–101(42)(a), C.R.S. (2014). While the majority considered PERA irrelevant because that statute postdates the exemption statute and deals with an unrelated subject matter, *Commer-*

*cial Research,* ¶ 20, the dissent reasoned that PERA's definition of "salary" indicated the legislature considered HSAs to be a type of retirement savings program, *id.* at ¶ 29 (Terry, J., dissenting). Second, Judge Terry looked to the statutory context in which "retirement plan" appears. *Id.* at ¶ 34. The exemption statute provides that a "retirement plan" includes plans that qualify under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), any individual retirement account ("IRA"), and any Roth individual retirement account ("Roth IRA"), as defined by federal law. § 13–54–102(1)(s). Thus, under the dissent's reasoning, characteristics that make an HSA look like an ERISA plan, IRA, or Roth IRA suggest that an HSA is also a type of retirement plan. *See Commercial Research,* ¶ 34 (Terry, J., dissenting). Construing the exemption statute liberally, she concluded that HSAs are retirement plans because they provide "retirement benefits." *Id.* at ¶ 35. We granted certiorari to interpret the meaning of "retirement plan" in the exemption statute.

## II.

¶ 7 We hold that an HSA is not a "retirement plan" within the meaning of Colorado's exemption statute. An HSA is not intended to replace income lost as a result of retirement; it is intended to cover medical costs incurred at any point during a person's lifetime. The General Assembly has not chosen to provide an exemption for HSAs in the relevant statutes.

### A. Standard of Review

¶ 8 Statutory interpretation is a question of law that we review de novo. *Tulips Invs., LLC v. State ex rel. Suthers,* 2015 CO 1, ¶ 11, 340 P.3d 1126, 1131. Our goal in construing a statute is to ascertain and give effect to the legislature's intent. *Id.* Before resorting to canons of statutory interpretation, we look to the language of the statute and give the words their plain and ordinary meaning. *Hassler v. Account Brokers of Larimer Cnty., Inc.,* 2012 CO 24, ¶ 15, 274 P.3d 547, 551–52. We prefer a commonly accepted meaning over a strained or forced interpretation. *People v. Voth,* 2013

CO 61, ¶ 21, 312 P.3d 144, 149. When a statute does not define a term, we assume that the General Assembly intended to give the term its usual and ordinary meaning. *Cohen v. State Dep't of Revenue*, 197 Colo. 385, 593 P.2d 957, 960 (1979); *see also Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo. App.2011) ("The absence of a statutory definition does not create ambiguity if, because the undefined phrase is one of common usage, a court can discern its usual and ordinary meaning.").

### B. The Exemption Statute

¶ 9 Colorado permits debtors to exempt certain property from garnishment, and from levy and sale under writ of attachment or writ of execution, allowing them to retain those assets rather than divide them among their creditors. As relevant here, section 13–54–102(1)(s) exempts

> [p]roperty, including funds, held in or payable from any pension or *retirement plan* or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974," as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time.

(Emphasis added.)

¶ 10 The historical purpose behind Colorado's statutory exemptions is to preserve the debtor's means of support. *Smith v. Pueblo Mercantile & Credit Ass'n*, 82 Colo. 364, 260 P. 109, 111 (1927). To effectuate this purpose, courts liberally construe exemptions in favor of debtors. *See* Colo. Const. art. XVIII, § 1 ("The general assembly shall pass liberal homestead and exemption laws."); *Sandberg v. Borstadt*, 48 Colo. 96, 109 P. 419, 421 (1910) ("Primarily, the exemption laws of the state are for the benefit of residents, and they are to be liberally construed."); *see also In re Larson*, 260 B.R. 174, 193 (Bankr.D.Colo.2001) ("[T]his Court notes the long-standing tradition in the courts of Colorado to construe all exemptions laws liberally in favor of debtors."). But courts cannot invoke the principle of liberal construction to alter the plain meaning of a statute. *See In re M.D.E.*, 2013 COA 13, ¶ 16, 297 P.3d 1058, 1061.

### C. Health Savings Accounts

¶ 11 When Congress enacted the Medicare Prescription Drug, Improvement, and Modernization Act in 2003, it created, among other things, a new type of tax-favored account—an HSA—to help eligible individuals save for medical expenses. *See* Pub.L. No. 108–173, § 1201, 117 Stat.2066, 2469 (2003). An individual can make contributions to an HSA only if that individual is separately covered by a "high deductible health plan," which is a health plan that requires beneficiaries to pay a certain amount of out-of-pocket expenses before the insurance plan begins picking up the tab. *See* 26 U.S.C. § 223(c)(1)(A)–(c)(2)(A) (2012).

¶ 12 Under federal law, HSA funds are held in trust "exclusively for the purpose of paying the qualified medical expenses of the account beneficiary." *Id.* § 223(d)(1). Eligible individuals may establish and make pre-tax contributions to their HSAs and then use those funds to pay or reimburse medical expenses at any time, regardless of age or employment status. *Id.* § 223(e)–(f). The beneficiary may also access the funds for any purpose under the condition that any such distribution loses its tax-exempt status and must be included in the beneficiary's gross income, and such distributions are subject to a twenty-percent tax penalty. *Id.* § 223(f)(2), (f)(4)(A). The penalty for non-health-care spending disappears once the beneficiary becomes Medicare-eligible at age sixty-five. *Id.* § 223(f)(4)(C); 42 U.S.C. § 1395c (2012).

¶ 13 In general, HSAs are not plans that qualify under ERISA. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 196 (4th Cir.2007) (characterizing employer con-

tributions to employees' HSAs as "non-ERISA healthcare spending"). Although the U.S. Department of Labor has indicated that HSAs may constitute ERISA-covered plans in limited circumstances where employer involvement with and control over the account is extensive,[2] the facts do not support such a characterization in this case.

### D. Application to This Case

 ¶ 14 Because Colorado's exemption statute does not define the term "retirement plan," we apply the principles of statutory construction to determine and give effect to the legislature's intended meaning. We conclude that the meaning of "retirement plan" in section 13–54–102(1)(s) is unambiguous and can be resolved with reasonable certainty. Drawing from relevant case law, common dictionary definitions, and the statutory context, we determine that the plain and ordinary meaning of "retirement plan" excludes HSAs.

¶ 15 The court of appeals previously interpreted the meaning of "retirement plan" within the scope of section 13–54–102(1)(s) in *Dillabaugh v. Ellerton*, 259 P.3d 550 (Colo. App.2011). That court determined that the phrase is unambiguous because it is commonly used and a court can discern its usual and ordinary meaning. *Id.* at 552. The court then reviewed three definitions of that term:

- First, a "retirement plan" is "a systematic arrangement established by an employer for guaranteeing an income to employees upon retirement according to definitely established rules with or without employee contributions." *In re Staniforth*, 116 B.R. 127, 131 (Bankr. W.D.Wis.1990) (quoting *Webster's Third New International Dictionary* 1939 (1986)).

- Second, a "retirement plan" is "[a]n employee benefit plan—such as a pension plan or Keogh plan—provided by an employer (or a self-employed person) for an employee's retirement." *Black's Law Dictionary* 603 (9th ed. 2009). In turn, an "employee benefit plan" is "[a] written stock-purchase, savings, option, bonus, stock-appreciation, profit-sharing, thrift, incentive, pension, or similar plan solely for employees, officers and advisors of a company." *Id.* at 602.

- Third, in a different statutory context, the General Assembly defined "retirement plan" as "a plan or account created by an employer, the principal, or another individual to provide retirement benefits or deferred compensation of which the principal is a participant, beneficiary, or owner, including [various enumerated plans or accounts under the Internal Revenue Code, none of which include an HSA]." § 15–14–738(1), C.R.S. (2014).[3]

*See Dillabaugh*, 259 P.3d at 552–53.

¶ 16 Evaluating these similar definitions, the court in *Dillabaugh* concluded that the term "retirement plan," as used in section 13–54–102(1)(s), is not ambiguous. *Id.* at 552–54; *see also id.* at 554 (holding that a "future retirement obligation" owed to the judgment debtor by his employer was a retirement plan). The court rejected the argument that a retirement plan, as set forth in the statute, is limited to plans that possess attributes of ERISA-qualified or tax-quali-

---

**2.** The Employee Benefits Security Administration within the U.S. Department of Labor issued two Field Assistance Bulletins addressing the interaction of ERISA with HSAs. Those reports concluded that HSAs generally do not constitute "employee welfare benefit plans" covered by ERISA where employer involvement with the HSA is limited. *See* U.S. Dep't of Labor, Employee Benefits Sec. Admin., Field Assistance Bulletin 2004–01 (Apr. 7, 2004); U.S. Dep't of Labor, Employee Benefits Sec. Admin., Field Assistance Bulletin 2006–02 (Oct. 27, 2006). In those bulletins, the Department of Labor specifically indicated that employer contributions to HSAs do not give rise to an ERISA-covered plan where the employee voluntarily establishes the account and the employer does not take the following actions: limit the ability of eligible individuals to move their funds to another HSA or impose conditions on utilization of HSA funds beyond those permitted under federal law; make or influence the investment decisions with respect to funds contributed to an HSA; represent that the HSA is an employee welfare benefit plan established or maintained by the employer; or receive any payment or compensation in connection with an HSA.

**3.** The General Assembly added this statutory section in 2009, after Congress created HSAs. *See* ch. 106, sec. 1, § 15–14–738(1)(a)–(g), 2009 Colo. Sess. Laws 384, 409.

fied plans. *Id.*; *but see In re Ludwig*, 345 B.R. 310, 318–19 (Bankr.D.Colo.2006) (applying the narrow construction rejected in *Dillabaugh* ).

¶ 17 In this case, the court of appeals agreed with *Dillabaugh* that the phrase "retirement plan," as used in the exemption statute, is unambiguous and must be interpreted according to its ordinary meaning. *Commercial Research*, ¶¶ 13–14. Whereas the parties in *Dillabaugh* agreed that the employer's obligation to the judgment debtor was intended for retirement—disputing narrowly whether it was a "plan" under the statute—here, the parties dispute whether an HSA is intended for retirement, such that it is considered a "retirement plan." Thus, recognizing that the meaning of the word "retirement" carries added weight in this case, the court of appeals noted that "retirement" is commonly understood to mean "[t]ermination of one's own employment or career, esp[ecially] upon reaching a certain age or for health reasons." *Id.* at ¶ 14 (alteration in original) (citing *Black's Law Dictionary* 1431 (9th ed. 2009)).

¶ 18 Incorporating the definitions identified in *Dillabaugh* with the court's own inquiry, the court of appeals concluded that the plain meaning of "retirement plan" is "a plan intended to provide an income to a person after that person retires from a career." *Id.* at ¶ 15. In other words, "it is a plan intended to replace, at least in part, an employee's loss of income attributable to retirement." *Id.* This definition of "retirement plan" is consistent with its specific statutory context, as well as the broader context of the exemption statute generally. As the court of appeals noted, the exempted retirement plans explicitly identified in section 13–54–102(1)(s)—ERISA-qualified plans, IRAs, and Roth IRAs—exist to provide income to a person after retirement. *Id.* at ¶ 16.

¶ 19 We agree with the court of appeals and conclude that an HSA is not a "retirement plan" as contemplated by section 13–54–102(1)(s). An HSA is not intended to provide income after retirement; it is intended to cover medical costs incurred at any point during an individual's lifetime. *See, e.g.,* 26 U.S.C. § 223(d)(1) (stating that an HSA holds funds "exclusively for the purpose of paying the qualified medical expenses of the account beneficiary"); Colo. Dep't of Personnel & Admin., Senate Bill 04–94 Report to the General Assembly, "Health Savings Accounts: Feasibility of Offering an HSA–Qualified High Deductible Health Plan to State Employees" 4 (Oct. 1, 2004) ("Unlike funds deposited in a retirement account that are generally not withdrawn until retirement, funds contributed to an HSA may be withdrawn during the accumulation period to pay medical expenses not covered by insurance."). Although HSA funds may be used during retirement, the same could be said of any number of savings accounts or other assets that the statute clearly does not exempt. HSAs are distinct from retirement plans because HSA funds may be used tax-free and penalty-free for medical expenses at any point in the beneficiary's life. Therefore, Roup's HSA is not exempt as a "retirement plan."

¶ 20 Roup argues that HSAs should be exempt because they share similarities with IRAs, a type of retirement plan specifically enumerated in the statute. For example, he observes that contributions to both types of accounts are tied to age: Individuals may contribute additional funds to their IRAs after age fifty, just as individuals may contribute additional funds to their HSAs between the ages of fifty-five and sixty-five, when they become Medicare eligible. *Compare* 26 U.S.C. § 219(b)(5)(B) (2012), *with id.* § 223(b)(3). Likewise, he observes that withdrawals from both types of accounts suffer similar tax penalties: IRAs have a ten-percent tax penalty for most disbursements until the age of fifty-nine and a half, which is comparable to HSAs, which impose a twenty-percent tax penalty for withdrawals for non-qualified, non-medical expenses but eliminate that penalty once an account-holder becomes Medicare eligible at age sixty-five. *Compare id.* § 72(q)(2)(A), *with id.* § 223(f)(4). Ultimately, Roup's argument is unpersuasive because these accounts differ in one critical respect: while a person generally cannot use IRA funds before retirement without incurring a penalty, that same person is free to

use HSA funds for medical expenses without regard to age, income, or retirement status.

¶ 21 IRAs function as a "substitute for wages" after an individual retires—they are "not mere savings accounts." *Rousey v. Jacoway*, 544 U.S. 320, 329–31, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005). While the beneficiaries' right to payment from IRAs is "causally connected to their age," *id.* at 327, 125 S.Ct. 1561, the same is not true for HSAs. Congress designed IRAs with the ten-percent penalty to deter pre-retirement withdrawals from such accounts. *Id.* In contrast, individuals may withdraw HSA funds to pay medical expenses at any point during their lives, tax-free and penalty-free. *See* 26 U.S.C. § 223(f). Congress established HSAs as a tax-favored means of saving for medical expenses in conjunction with a high-deductible health insurance policy. The statute does not put any limitation on when, or at what age or employment status, those qualified distributions may be made. Therefore, we determine that—unlike an IRA—the funds held in an HSA do not substitute for wages lost upon retirement. Rather, a beneficiary places funds in an HSA for the primary purpose of paying qualified medical expenses to overcome the cost of high deductibles associated with high-deductible health plans.

¶ 22 We note that Colorado has amended its exemption statute several times since Congress established HSAs in 2003, but none of the changes included any reference to HSAs.[4] By contrast, other states have amended their statutes to specifically exempt HSAs.[5] *See In re Stanger*, 385 B.R. 758, 764–65 (Bankr.D.Idaho 2008) (holding that the debtors' HSA did not fall within any of Idaho's exemptions and noting that, although other states had amended their statutes to specifically exempt HSAs, Idaho had not followed suit). Roup's claim of exemption would be better directed to the legislative branch of our state government, not the judiciary. We must apply the law as we find it, carrying out the General Assembly's intent as expressed in the statute itself, and we will not interpret a law to mean that which it does not express. *People ex rel. Marks v. Dist. Court*, 161 Colo. 14, 420 P.2d 236, 241 (1966). The plain language of section 13–54–102(1)(s) mandates the conclusion that Roup's HSA is not a retirement plan subject to exemption.

¶ 23 We therefore hold that an HSA is not a "retirement plan" within the meaning of Colorado's exemption statute. An HSA is not intended to replace income lost as a result of retirement; it is intended to cover medical costs incurred at any point during a person's lifetime. The General Assembly has not chosen to provide an exemption for HSAs in the relevant statutes.

### III.

¶ 24 Accordingly, we affirm the judgment of the court of appeals.

---

**4.** *See* ch. 147, sec. 1, § 13–54–102(1)(I)(A), 2010 Colo. Sess. Laws 507, 507 (increasing the exempt amount of life insurance policies); ch. 226, sec. 3, § 13–54–102, 2007 Colo. Sess. Laws 875, 876 (increasing the value of certain exempted property); ch. 428, sec. 27, § 13–54–102(1)(s), 2007 Colo. Sess. Laws 2017, 2026 (amending the specific exemption at issue in this case to reflect changes in federal law, providing that plans qualifying under ERISA "as amended" would be exempt).

**5.** Those states include: Florida, Indiana, Minnesota, Mississippi, Nebraska, Oregon, Tennessee, Texas, Virginia, and Washington. Unlike Colorado's exemption statute, these statutes explicitly address the exemption status of HSAs. *See* Fla. Stat. § 222.22(2) (2015); Ind.Code § 34–55–10–2(c)(8) (2014); Minn.Stat. § 352.98 (2014); Miss. Code Ann. § 85–3–1(g) (2014); Neb.Rev.Stat. § 21–1799(2) (2014); Or.Rev.Stat. § 18.345(1)(*o*) (2014); Tenn.Code Ann. § 26–2–105(b) (2014); Tex. Prop.Code Ann. § 42.0021(a) (West 2014); Va.Code Ann. § 38.2–5604(B) (2014); Wash. Rev.Code § 6.15.020(3)–(4) (2014).