The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 14, 2022

## 2022COA43

**No. 21CA0659, *People in Interest of J.J.L.* — American Indian
Law — ICWA — Notice; Juvenile Court — Dependency and
Neglect — Termination of the Parent-Child Legal Relationship
— Compliance with the Federal "Indian Child Welfare Act" —
Knows — Reason to Know — Due Diligence**

In this dependency and neglect proceeding, a division of the
court of appeals holds that a parent's assertion of Indian heritage,
standing alone, is not a "reason to know" the child is an Indian
child that triggers the notice requirements of the Indian Child
Welfare Act of 1978, 25 U.S.C. §§ 1901-1963, and section 19-1-126,
C.R.S. 2021. But such an assertion does trigger the petitioning
party's obligation under section 19-1-126(3) to "exercise due
diligence" to assist the juvenile court in determining whether there
is "reason to know" that the child is an Indian child.

The division clarifies section 19-1-126(3)'s due diligence obligation.  Like the division in *People in Interest of A-J.A.B.*, 2022 COA 31, this division concludes that the exercise of due diligence requires the petitioning party — usually a department of human services — to follow up with any parent who discloses Indian heritage to determine the basis of the parent's belief or understanding.  Unlike *A-J.A.B.*, however, this division concludes that there is no prescribed set of steps that the department must follow to satisfy section 19-1-126(3)'s due diligence obligation. Instead, what constitutes due diligence is flexible and will necessarily depend on the circumstances of, and the information presented to the court in, each case.

Because the record in this case does not show that section 19-1-126(3)'s obligation was met, the division remands the case with instructions for the juvenile court to direct the department to "exercise due diligence" and assist the juvenile court to properly determine whether, with more adequate information, there is "reason to know" that the child is an Indian child under section 19-1-126(3).

COLORADO COURT OF APPEALS **2022COA43**

Court of Appeals No. 21CA0659
City and County of Denver Juvenile Court No. 19JV1672
Honorable Pax Moultrie, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Jay.J.L. and Jac.J.L., Children,

and Concerning B.J.L. and J.M.G.,

Appellants.

ORDER OF LIMITED REMAND

Division V
Opinion by JUDGE YUN
Dunn and Welling, JJ., concur

Announced April 14, 2022

Kristin M. Bronson, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Jeffrey C. Koy, Jordan Oates, Lauren Dingboom, Claire Collins, Guardians Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Kaneohe, Hawaii, for Appellant B.J.L.

The Morgan Law Office, Kris P. Morgan, Colorado Springs, Colorado, for Appellant J.M.G.

¶ 1     In this dependency and neglect proceeding, J.M.G. (mother) and B.J.L. (father) appeal the juvenile court's judgment terminating their parent-child legal relationships with J.J.L. (the child). To decide this appeal, we must dive into the requirements of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and section 19-1-126, C.R.S. 2021.

¶ 2     It is well established that when the court knows or has reason to know that an Indian child is involved in a termination proceeding, the court must ensure that the party seeking termination provides notice of the proceeding to the potentially concerned tribe or tribes. But, in this case, we must determine whether mother's assertion of Indian heritage, which she connected to specific tribal ancestral groups, constituted a reason to know that the child was an Indian child or, in the alternative, whether it required the petitioning party to exercise due diligence to gather additional information under section 19-1-126(3).

¶ 3     We conclude that a parent's assertion of Indian heritage, standing alone, is insufficient to trigger ICWA's notice requirements but, rather, it invokes the petitioning party's obligation to exercise due diligence under section 19-1-126(3). We further conclude that

the exercise of due diligence under this provision is flexible and depends on the circumstances of, and the information presented to the court in, each case. Nonetheless, the record needs to show that the petitioning party earnestly endeavored to gather additional information that would assist the court in determining whether there is reason to know that the child is an Indian child.

¶ 4 Because the record does not demonstrate that the petitioning party met this obligation, we remand the case to the juvenile court for further proceedings.

## I. The Juvenile Court Proceeding

¶ 5 In November 2019, the Denver Department of Human Services filed a dependency and neglect petition concerning the two-year-old child and a younger sibling who is not subject to this appeal. In the petition, the department indicated that mother reported having Cherokee or Navajo heritage but was "uncertain which and does not know if anyone in her family was an enrolled member."

¶ 6 At the initial temporary custody hearing, mother also told the juvenile court that she had Cherokee or Navajo heritage. The court determined that this was not reason to know that the child is an Indian child. Still, it told mother to complete an ICWA ancestry

chart and directed the department to exercise due diligence to gather additional information that would assist it in determining whether there was reason to know that the child is an Indian child.

¶ 7 Mother promptly completed and submitted an ICWA inquiry form, as well as an ICWA ancestry chart. On the form, mother again indicated that either she or someone in her family had Indian heritage, but she also checked boxes indicating that she was not enrolled in an Indian tribe and that the child was neither enrolled in a tribe nor eligible for enrollment. In the ICWA ancestry chart, mother identified her tribe as Cherokee, but she did not fill in additional sections that sought tribal affiliations for the maternal grandparents and great-grandparents.

¶ 8 The court adjudicated the child dependent and neglected and entered dispositional orders concerning both parents. Although the court did not expressly address ICWA's applicability as part of the dispositional orders, it later reiterated that the department should investigate mother's claim of Cherokee or Navajo heritage.

¶ 9 In December 2020, the department moved to terminate the legal relationships between the child and his parents. As part of its termination motion, the department asserted that there was no

3

reason to know, based on inquiries of both parents, that the child is an Indian child.

¶ 10    About a month later, the department filed a declaration listing additional diligent efforts it had made to determine whether there was reason to know that the child is an Indian child. These included the following:

- contacting the maternal grandmother, who indicated that she "was not aware of any Native American heritage for her family";

- contacting a maternal aunt, who "reported not knowing if there was any Native American heritage for her family";

- reviewing the "Colorado Courts System," which showed that the parents had been subject to two earlier dependency and neglect cases — one in 2008 and one in 2010 — and the court had determined that ICWA was inapplicable in each case; and

- reviewing the "TRAILS" system, which revealed that a social history record for mother "[did] not indicate any Native American heritage other than possible Cherokee heritage."

4

¶ 11    Following a multi-day termination hearing between January and April 2021, the juvenile court again addressed ICWA's applicability.  The court determined that ICWA was inapplicable because the department's efforts to investigate mother's report of heritage had not shown reason to know that the child is an Indian child.  The court entered judgment terminating the parental rights of mother and father.

## II.    ICWA's Notice Requirement

¶ 12    We first address mother's assertion that ICWA required the department to give notice of the proceeding to the federally recognized Cherokee and Navajo tribes.

## A.    Preservation

¶ 13    Initially, we note that, before the termination hearing, the parties stipulated that "there does not appear to be reason to know that ICWA applies to these proceedings" based on the department's declaration of its efforts to investigate "possible Native American heritage for the family."

¶ 14    Even so, ICWA's notice requirements serve the interests of Indian tribes, giving them "a meaningful opportunity to participate in determining whether the child is Indian." *B.H. v. People in*

5

*Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006); *People in Interest of J.O.*, 170 P.3d 840, 842 (Colo. App. 2007).  Consequently, they cannot be waived by a parent and may be raised for the first time on appeal.  *J.O.*, 170 P.3d at 842.

B.    Standard of Review and Statutory Interpretation

¶ 15    Whether ICWA applies to a proceeding is a question of law that we review de novo.  *People in Interest of M.V.*, 2018 COA 163, ¶ 32.  We also review de novo questions of statutory interpretation.  *People in Interest of K.C. v. K.C.*, 2021 CO 33, ¶ 21.

¶ 16    In construing a statute, we consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts, and we interpret words and phrases in accordance with their plain and ordinary meanings.  *Id.*  In addition, statutes enacted for the benefit of Indians, as well as regulations, guidelines, and state statutes promulgated to implement those statutes, must be liberally construed in favor of Indian interests.  *People in Interest of A.R.*, 2012 COA 195M, ¶ 18; *see also Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

## C. The Legal Framework

¶ 17 ICWA aims to protect and to preserve Indian tribes and their resources and to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(2), (3); *M.V.*, ¶ 10. ICWA recognizes that Indian tribes have a separate interest in Indian children that is equivalent to, but distinct from, parental interests. *B.H.*, 138 P.3d at 303; *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989).

¶ 18 If the court knows or has reason to know that an Indian child is involved in a child custody proceeding, including one for the termination of parental rights, the petitioning party — often the department of human services — must provide notice to any identified Indian tribes. 25 U.S.C. § 1912(a); § 19-1-126(1)(b); *see also B.H.*, 138 P.3d at 302.

¶ 19 To comply with ICWA's notice provisions, the department must notify each tribe by registered mail, with return receipt requested, of the pending child custody proceeding and the tribe's right to intervene. *M.V.*, ¶ 26. And copies of these notices must be sent to the appropriate regional director of the Bureau of Indian Affairs (BIA). 25 C.F.R. § 23.11(a) (2021); *see also M.V.*, ¶ 28.

7

### D. Determining When ICWA Applies

¶ 20    The juvenile court must ask each participant on the record at the start of every child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. 25 C.F.R. § 23.107(a) (2021); *People in Interest of L.L.*, 2017 COA 38, ¶ 19.

¶ 21    For purposes of ICWA, an Indian child is an unmarried person under the age of eighteen who is either (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4). Thus, a child's eligibility for membership in a tribe does not, in and of itself, render the child an Indian child under ICWA. *K.C.*, ¶ 24.

¶ 22    But ICWA does not define tribal membership. *Id.* at ¶ 28. Rather, membership is left exclusively to the control of each individual tribe. *Id.* This means that a tribe's determination of membership or membership eligibility is conclusive and final. *People in Interest of J.A.S.*, 160 P.3d 257, 260 (Colo. App. 2007). And the court may not substitute its own determination regarding a child's membership in a tribe, a child's eligibility for membership in

a tribe, or a parent's membership in a tribe.  25 C.F.R. § 23.108(b) (2021).

¶ 23     Against this backdrop, the federal regulations implementing ICWA provide that a court has reason to know that a child is an Indian child if

> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
>
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
>
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
>
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
>
> (5) The court is informed that the child is or has been a ward of a Tribal court; or
>
> (6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c).  These factors are incorporated into the Colorado Children's Code under section 19-1-126(1)(a)(II).

## E. Analysis of Reason to Know

¶ 24 The record established that five of these six factors are not at issue in this case. Mother did not inform the court that the child is an Indian child. Recall that, while mother reported Cherokee or Navajo heritage, she checked boxes indicating that neither she nor the child was enrolled in a tribe. Nor did the child give the court reason to know that he is an Indian child. And mother confirmed that neither she nor the child had lived on a reservation, the child had not been a ward of a tribal court, and neither she nor the child had a tribal identification card.

¶ 25 Thus, we turn to the remaining reason-to-know factor — a participant in the case informs the court that he or she has discovered information indicating that the child is an Indian child. *See* 25 C.F.R. § 23.107(c)(2); § 19-1-126(1)(a)(II)(B).

¶ 26 In *People in Interest of E.M.*, 2021 COA 152, ¶¶ 14-15 (*cert. granted in part* Mar. 7, 2022), a division of this court recently concluded that a juvenile court had reason to know that a child is an Indian child under this factor based on information about the child's Indian heritage. The division reasoned that, because this factor had a different meaning than being informed that the child is

10

an Indian child, it applied when the court had information that the child may have ancestors affiliated with a specific tribe but the information does not satisfy all the criteria of the Indian child definition. *Id.* at ¶¶ 16-17.

¶ 27    However, another division of this court later determined that an assertion of tribal heritage — similar to mother's assertion of Cherokee or Navajo heritage in this case — does not give the court reason to know that a child is an Indian child. *See People in Interest of A-J.A.B.*, 2022 COA 31, ¶¶ 72-77. The division in *A-J.A.B.* emphasized that the definition of an Indian child "does not apply simply based on a child['s] or parent's Indian ancestry" but depends on "a political relationship" to a tribe. *Id.* at ¶ 72 (citation omitted). And it concluded that the difference between the reason-to-know factors based on a participant informing the court that the child is an Indian child, *see* 25 C.F.R. § 23.107(c)(1), § 19-1-126(1)(a)(II)(A), and a participant informing the court that it has discovered information that the child is an Indian child, *see* 25 C.F.R. § 23.107(c)(2); § 19-1-126(1)(a)(II)(B), is temporal, *A-J.A.B.*, ¶ 73. This latter reason-to-know factor applies when a

participant has discovered information during the proceeding indicating that the child is an Indian child. *Id.* at ¶¶ 72-74.

¶ 28    We are persuaded by the reasoning of *A-J.A.B.* because determining whether a court has reason to know that a child is an Indian child turns on whether a child is either (1) a tribal member or (2) eligible for membership and the biological child of a tribal member. To be sure, tribal ancestry and lineage are among the criteria that tribes may use to determine membership. *See B.H.,* 138 P.3d at 303. Still, an assertion of Indian heritage connected to specific tribal ancestral groups does not, in and of itself, demonstrate a substantial chance that the child is a tribal member or eligible for membership. *See A-J.A.B.,* ¶¶ 36, 40 (defining reason to know as demonstrating a substantial chance that the child is an Indian child under the six reason-to-know factors).

¶ 29    We recognize our supreme court has determined that the threshold requirement for ICWA notice was not intended to be high and that sufficiently reliable information of virtually any criteria on which tribal membership might be based was adequate to trigger ICWA's notice provisions. *B.H.,* 138 P.3d at 303-04.

¶ 30    However, at that time, Colorado's ICWA-implementing statute required departments to notify tribes if they knew or had reason to believe that the child involved in the proceeding was an Indian child. *A-J.A.B.*, ¶ 76; *see also* § 19-1-126(1)(b), C.R.S. 2005. Our legislature has since removed that standard from the statute and replaced it with a requirement to notify tribes when there is reason to know. Ch. 305, sec. 2, § 19-1-126, 2019 Colo. Sess. Laws 2793.

¶ 31    The *B.H.* court also relied on the 1979 BIA Guidelines. These guidelines contained examples of circumstances that created reason to believe, including when

- any public or state-licensed agency involved in child protection services or family support has discovered information suggesting that the child is an Indian child; or

- an officer of the court involved in the proceeding has knowledge that the child may be an Indian child.

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,586 (Nov. 29, 1979).

¶ 32    But the 1979 Guidelines are no longer in effect. And these definitions are not included as reasons to know that a child is an

13

Indian child under 25 C.F.R. § 23.107(c) or section 19-1-126(1)(a)(II). As a result, *B.H.* required notice to tribes under a different standard than the one in effect today. *A-J.A.B.*, ¶ 76.

¶ 33    For these reasons, we conclude that mother's report of Cherokee or Navajo heritage was not reason to know that the child is an Indian child triggering ICWA's notice requirements.

### III.    Colorado's Due Diligence Requirement

¶ 34    Having determined that mother's report of Indian heritage did not give the court reason to know that the child is an Indian child, we must next consider whether the department met its obligation to exercise due diligence under section 19-1-126(3).

### A.    Standard of Review

¶ 35    A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31. However, the decision of whether a party has exercised due diligence is within the court's discretion. *See People in Interest of J.C.S.*, 169 P.3d 240, 243 (Colo. App. 2007). And we will not disturb the court's factual

findings when they are supported by the record. *Id.*; *see also M.A.W.*, ¶ 32.

### B. The Due Diligence Requirement

¶ 36    In addition to implementing ICWA's requirements, section 19-1-126(3) imposes an additional due diligence requirement in cases that are brought under the Children's Code. It provides:

> If the court receives information that the child may have Indian heritage but does not have sufficient information to determine that there is reason to know that the child is an Indian child pursuant to subsection (1)(a)(II) of this section, the court shall direct the petitioning or filing party to exercise *due diligence* in gathering additional information that would assist the court in determining whether there is reason to know that the child is an Indian child. The court shall direct the petitioning or filing party to make a record of the effort taken to determine whether or not there is reason to know that the child is an Indian child.

§ 19-1-126(3) (emphasis added).

¶ 37    Our legislature did not define due diligence under section 19-1-126(3). When a statute does not define a term, we assume that the legislature intended to give the term its usual and ordinary meaning. *Roup v. Com. Rsch., LLC*, 2015 CO 38, ¶ 8. Diligence is defined as "steady, earnest, and energetic effort" and "devoted and

15

painstaking work and application to accomplish an undertaking." *A-J.A.B.*, ¶ 50 (citation omitted). Due diligence is commonly understood as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Id.* (citation omitted); *see also Minshall v. Johnston*, 2018 COA 44, ¶ 18.

¶ 38 As a result, we agree with the division in *A-J.A.B.* that the record needs to establish that the department (the petitioning party) earnestly endeavored to gather additional information that would assist the court in determining whether there is reason to know that the child is an Indian child. *A-J.A.B.*, ¶ 59. We also agree that, to meet this standard, the department must follow up with any parent who discloses Indian heritage to determine the basis of the parent's belief or understanding. *See id.* at ¶ 61. Indeed, the basis for a parent's belief or understanding will be the key to determining what due diligence is required in any particular case. *Id.*

¶ 39 However, we part ways with *A-J.A.B.*'s determination that the department must take certain other steps to satisfy due diligence under section 19-1-126(3). Specifically, the division in *A-J.A.B.* held that the department was required to contact available family

16

members and determine whether they have additional information that would help the court determine whether the child is an Indian child. *See id.* at ¶ 62. These efforts, in turn, would enable the department to determine whether any other persons, agencies, organizations, or tribes may have additional information concerning whether there is a reason to know that the child is an Indian child. *Id.* at ¶ 63. And the division determined that it may be necessary to contact a tribe or tribes when there are no other satisfactory sources of additional information. *Id.* at ¶ 64.

¶ 40    We are not persuaded that a petitioning party must necessarily take such steps to satisfy due diligence under section 19-1-126(3). First, the statute does not enumerate specific steps that a party must take to satisfy due diligence. Second, "[t]here is no objective, formulaic standard for determining what is, or is not, due diligence." *Owens v. Tergeson*, 2015 COA 164, ¶ 45 (quoting *Abreu v. Gilmer*, 985 P.2d 746, 749 (Nev. 1999)). Nor does due diligence necessarily require the party exercising it to actually succeed in its efforts or exhaust every possible option in attempting to do so. *See Minshall*, ¶ 18.

¶ 41    Consequently, apart from following up with any parent who discloses Indian heritage to determine the basis of the parent's belief or understanding, the department is not required to take prescribed steps to satisfy due diligence under section 19-1-126(3). Rather, a determination of what constitutes due diligence is flexible and will necessarily depend on the circumstances of, and the information presented to the court in, each case.  *See Owens*, ¶ 45 (recognizing that due diligence must be tailored to fit the circumstances of each case).

¶ 42    After obtaining the additional information necessary to satisfy due diligence, the department must advise the court of the efforts that it has taken and whether it believes that the information rises to the level of reason to know under 25 C.F.R. § 23.107(c) and section 19-1-126(1)(a)(II).  *See A-J.A.B.*, ¶ 63.

¶ 43    Based on this additional information, the court must then determine whether the department exercised due diligence and whether there is reason to know that the child is an Indian child. This determination may be based on (1) the recognition that only a tribe can determine who is a member or eligible for tribal membership; (2) the nature and the credibility of the source of the

18

information; and (3) the basis of the source's knowledge. *Id.* at ¶ 66.

¶ 44    In lieu of taking these steps to ascertain the basis for the parent's claim of heritage and following up on that information, the department may of course give notice of the proceeding to the federally recognized tribes that are included within the ancestral group identified by the parent.  Sending such notice achieves the same purpose as exercising due diligence under section 19-1-126(3).  Each tribe can then provide a definitive answer as to whether the child is a tribal member or eligible for membership and the child of a tribal member.  *See J.A.S.*, 160 P.3d at 260.  This information will enable the juvenile court to determine whether the child is an Indian child for purposes of ICWA.

## C.    Application

¶ 45    The record does not establish that the department satisfied its obligation to exercise due diligence under section 19-1-126(3).  The department's declaration of diligent efforts shows that it contacted family members and reviewed records concerning past cases to determine whether the child is an Indian child.  True, the declaration indicates that mother did not know who in her family

was a tribal member. But, significantly, it does not show that the department followed up with mother to ascertain the basis for her belief or understanding that she and the child had Cherokee or Navajo heritage.

¶ 46 Specifically, on the ICWA ancestry chart, mother identified an "unknown" tribal affiliation for her father (the child's maternal grandfather). Although mother also indicated that her father (as well as his parents) were deceased, the declaration of diligent efforts does not show that the department investigated whether mother's understanding or belief that she had Cherokee or Navajo heritage came from her paternal family members and, if so, whether there was any other person who would have additional information.

¶ 47 Additionally, the information that the department obtained from other family members and past court records focused exclusively on whether the family had Indian heritage. The declaration does not establish whether the family members had additional information beyond an assertion of heritage that would assist the court in determining whether there was reason to know that the child is an Indian child.

20

¶ 48     Under these circumstances, the record does not demonstrate compliance with the due diligence requirement of section 19-1-126(3), and we must remand the case to the juvenile court.

## IV.   Procedure on Remand

¶ 49     For the reasons discussed, we remand the case for the juvenile court to expeditiously determine whether there is reason to know that the child is an Indian child before recertifying the case to our court for a decision.  *See* § 19-1-109(1), C.R.S. 2021 (providing that appeals "shall be decided at the earliest practical time").

¶ 50     On remand, the juvenile court shall give the department the option of either giving ICWA-compliant notice to the federally recognized Cherokee and Navajo tribes or gathering additional information under section 19-1-126(3).  If the department undertakes the latter option, the court shall direct the department to exercise due diligence by inquiring of mother about the basis of her belief or understanding about the family's Indian heritage.  This inquiry should include whether mother's understanding or belief that she has Cherokee or Navajo heritage came from her paternal family members, and, if so, whether there is any other person who has additional information.

21

¶ 51    Based on the information obtained during this follow up inquiry, the department should take further steps to gather additional information that would help the court determine whether there is reason to know that the child is an Indian child.

¶ 52    After obtaining additional information, the department must make a record of its efforts and advise the court as to whether the information satisfies one of the reason-to-know factors under 25 C.F.R. § 23.107(c) and section 19-1-126(1)(a)(II).

¶ 53    The juvenile court must then enter findings as to whether the department has satisfied the due diligence requirement under section 19-1-126(3) and whether there is reason to know that the child is an Indian child, considering the nature and credibility of the source of the information and the basis of the source's knowledge.  *See B.H.*, 138 P.3d at 303.

¶ 54    If the juvenile court determines that there is not a reason to know that the child is an Indian child, the department must file a notice with this court along with a copy of the juvenile court's order within seven days after the issuance of the order making this determination.  The appeal shall then be recertified.  A supplemental record, consisting of the court record created on

remand, is due fourteen days after recertification. Within seven days of the matter being recertified, if any party wishes to supplement the record with transcripts of hearings that occurred on remand, that party shall file a supplemental designation of transcripts with the juvenile court and this court. If supplemental transcripts are designated, the complete supplemental record, including the court record, will be due twenty-one days after the supplemental designation of transcripts was filed. And within fourteen days of recertification, mother may file a supplemental brief, not to exceed 3,500 words, limited to addressing the juvenile court's determination. If mother files a supplemental brief, then the other parties may file supplemental briefs in response, within fourteen days, not to exceed 3,500 words.

¶ 55  If the juvenile court determines that it has reason to know that the child is an Indian child, the department must file a notice with this court along with a copy of the juvenile court's order within seven days after the issuance of the order making this determination. The appeal shall be recertified to permit a division of this court to issue an opinion vacating the termination judgment and remanding the case to the juvenile court with directions to

23

follow the substantive and procedural requirements under ICWA and section 19-1-126.

¶ 56    We further order the department to notify this court in writing of the status of the juvenile court proceedings if this matter is not concluded within twenty-eight days from the date of this order, and to do so every twenty-eight days thereafter until the juvenile court issues its order on remand.

JUDGE DUNN and JUDGE WELLING concur.